UNITED STATES of America, Appellee,

v.

**William COSBY, Appellant.**

No. 75–1570.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1975.

Decided Feb. 9, 1976.

Rehearing and Rehearing En Banc Denied Feb. 27, 1976.

Robert A. Hampe, St. Louis, Mo., for appellant.

Richard A. Heidenry, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

William Cosby, appellant here and defendant below, was convicted by a jury in the United States District Court for the Eastern District of Missouri [1] on two counts of a ten-count indictment that charged that during January and February, 1975 the defendant and two other men, Phelbert Angle and Danny Joseph Mayer, had unlawfully distributed substantial quantities of heroin in the City of St. Louis, Missouri in violation of 21 U.S.C. § 841(a)(1). The defendant was convicted on Counts IV and VII of the indictment in which counts both he and Angle were named as defendants. The district court imposed concurrent sentences of twelve years imprisonment on each count to be followed by a special parole term of three years. Defendant appeals.

The fourth count of the indictment charged that on or about January 30, 1975 the defendant and Angle unlawfully distributed 6.80 grains of heroin, and the seventh count charged that on or about February 26, 1975 the defendant and Angle unlawfully distributed 2.42 grains of heroin.[2] It will be observed that in neither of those counts was the distributee of the drug identified nor was a distributee identified in any of the other counts of the indictment.

---

1. The Honorable H. Kenneth Wangelin, United States District Judge.

2. The first, second, third and fifth counts charged Angle alone with unlawful distributions. The sixth, eighth, ninth and tenth counts charged Mayer alone with unlawful distributions. Angle and Mayer each pleaded guilty to one count in which they, respectively, were named as defendants; the other counts against them presumably were dismissed. The defendant, Cosby, stood trial alone.

Numerous pretrial motions were filed on behalf of the defendant and he was able to obtain a good deal of information, most of it negative, from government counsel. Counsel for the defendant did not move for a bill of particulars and did not specifically request that the distributee of the drugs mentioned in Counts IV and VII be identified. Counsel did call upon the government to produce any informant involved in the case, and the government responded by saying that no informant was involved.

At the commencement of the trial defense counsel submitted seven written questions that he asked to be propounded by the trial judge to the members of the jury panel in the course of voir dire examination which was to be conducted by the trial judge personally. See Fed. R.Crim.P. 24(a). Four of those questions would have inquired of the members of the panel as to whether they agreed with certain fundamental concepts of American criminal procedure such as the presumption of innocence, burden of proof, and reasonable doubt. The other three questions dealt with other matters, including the possibility of racial prejudice. Cosby is a black man.

The district court indicated that he would interrogate the jury with respect to the ground covered by the last three questions but would not propound the first four because "I will instruct the jury on what the law is on those matters and I assume they'll follow my instructions." We will return to this subject in due course.

After opening statements had been made, the government called a number of witnesses, introduced certain exhibits, and rested. Counsel for the defendant then moved for a judgment of acquittal on the ground that there was a fatal variance between the charges against him and the government's proof. That motion was denied. The defendant then rested with the government; the case was argued, and the jury instructed. As indicated, the defendant was found guilty on both of the counts against him.

The defendant contends for reversal that the district court erred in refusing to propound, at least in substance, the first four voir dire questions suggested by defense counsel,[3] and that the district court erred in denying the defendant's motion for a judgment of acquittal.

From the evidence in the case the jury was justified in finding substantially the following facts, which were not disputed except to the extent that defense counsel undertook by cross examination to break down the testimony of government witnesses:

In the winter of 1975 the defendant was selling heroin in St. Louis, and Angle and Mayer were customers of his. Both Angle and Mayer were heroin addicts. Angle had been using the drug for some twenty or twenty-five years; Mayer had been using it for about four years. During January, 1975 Angle and Mayer shared the same apartment in St. Louis, but Angle had moved out shortly before the date alleged in Count VII of the indictment.

During January and February, 1975, Benny L. Green, a detective employed by the St. Louis Police Department, was conducting an undercover operation relating to the illicit drug traffic in the City. Green had dealings with both Angle and Mayer, neither one of whom was aware that Green was a law enforcement officer. Green had no direct dealings with the defendant.

---

**3.** The four questions are:

1. Is there anyone on the panel who argues with the proposition that the Government must prove the defendant guilty beyond a reasonable doubt?

2. Is there anyone on the panel who argues with the proposition that the Government has the burden of proof?

3. Is there anyone on the panel who argues with the proposition that the defendant is presumed innocent unless and until the Government meets its burden of proving guilt beyond a reasonable doubt, if the Government ever does?

4. Is there anyone on the panel who does not look at the defendant and presume him to be innocent as he sits before you?

On the occasion mentioned in Count IV of the indictment, Green was able to obtain from the defendant the quantity of heroin mentioned in that count. The defendant dealt directly with Angle who was acting as Green's intermediary; Angle paid for the heroin with money furnished by Green and turned the drug over to Green. Green obtained the heroin mentioned in Count VII of the indictment in substantially the same way in which he had obtained the drug mentioned in Count IV. As to the transaction which resulted in Count VII, Mayer participated to some extent, supplied some of the money that was given to Angle and that went ultimately to the defendant, and received for his own use or resale some of the heroin that Angle acquired from the defendant.

The defendant knew of course that he was selling heroin to Angle, and he probably also knew that Angle was in turn disposing of all or part of the substance by selling or otherwise distributing it to others. Naturally, the defendant did not know that Angle was turning the drugs over to an undercover police officer. Neither did Angle or Mayer.

Defendant's claim of variance is that the indictment charged the defendant and Angle with a joint distribution of heroin to a third person whereas the proof showed that actually the defendant sold the heroin to Angle, and that Angle later "distributed" the drug to Green. To put it slightly differently, defendant argues that the indictment charges that he and Angle were engaged in a "joint venture" of selling drugs to third parties whereas there was no such joint enterprise.

In view of the evidence in the case we see no merit in this contention.

Fed.R.Crim.P. 52(a) provides that an error, defect, irregularity, or variance that does not affect substantial rights is to be disregarded. A variance between indictment and proof in a criminal case may prejudice a defendant substantially if it prevents him from presenting his defense properly, if it takes him unfairly by surprise, or if it exposes him to the risk of double jeopardy. But unless such a variance prejudices the defendant in one or more of those ways, it is not fatal. *United States v. Good Shield,* 515 F.2d 1 (8th Cir. 1975), and cases there cited.

We will assume, at least for purposes of discussion, that a variance exists where an indictment charges a joint distribution of heroin by two defendants to an unidentified distributee and the proof shows that the defendant complaining of the variance in fact sold the heroin to the other defendant who in turn passed it on to an ultimate distributee identified in the evidence. In this case, however, we do not see that the assumed variance [4] adversely affected any substantial rights of the defendant.

In a prosecution for an unlawful distribution of heroin under § 841(a)(1) the identity of the distributee is not an essential element of the offense charged, and the government is not required to identify the distributee in the indictment. *United States v. Martin,* 482 F.2d 202 (8th Cir. 1973). The same rule prevailed with respect to indictments returned under then existing prohibitions of sales of narcotics appearing in the Internal Revenue Code of 1954. *United States v. Crockett,* 421 F.2d 649 (8th Cir. 1970); *McWilliams v. United States,* 394 F.2d 41 (8th Cir. 1968), *cert. denied,* 393 U.S. 1044, 89 S.Ct. 643, 21 L.Ed.2d 593

---

**4.** We are not at all sure that the alleged variance of which the defendant complains was really a variance. Both the defendant and Angle "distributed" the heroin referred to in the respective counts, and both violated the law when they did so. Both transactions can be viewed as continuous movements of heroin from the defendant to Green with Angle acting as a culpable intermediary; or, they can be characterized as sales from defendant to Angle with the subsequent transfers to Green being immaterial; or, it can be argued that the defendant knowingly aided and abetted Angle in an unlawful distribution of the heroin to Green.

(1969); *Hemphill v. United States,* 392 F.2d 45 (8th Cir.), *cert. denied,* 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968); *Aggers v. United States,* 366 F.2d 744 (8th Cir. 1966), *cert. denied,* 385 U.S. 1010, 87 S.Ct. 719, 17 L.Ed.2d 548 (1967).

The very fact that the defendant and Angle were charged with what may be construed as a joint distribution to an unnamed distributee was in itself sufficient to put the defendant and his attorney on notice that a third person was involved, and defense counsel must have known in view of the indictment that the third person was in all probability either an informant or a law enforcement officer who would surface in due course. Had counsel filed a motion for a bill of particulars inquiring as to the identities of the distributees in question, that information would in all probability have been supplied. *See Aggers v. United States, supra,* 366 F.2d at 746–47. But no such motion was filed.

The government did not mislead counsel when it advised that no informant was involved in the case because Green, Angle and Mayer were not informants. Green was a police officer on duty, and Angle and Mayer were drug users and peddlers who did not know that they were dealing with an officer and that they would be prosecuted for their dealings.

With knowledge that no informant was involved, the defense probably knew that the unidentified distributee was an officer. In any event, it is plain from the record that the defendant and his attorney were not surprised at trial when Detective Green took the stand and when he and other witnesses revealed that the heroin that had passed originally from the defendant to Angle had in turn been passed on to Green.

Nor did the disclosure that Angle had been acting as an unwitting intermediary between the defendant and the police adversely affect the defendant in preparing his defense. In fact, he had no defense except to put in issue by his plea of not guilty all of the essential elements of the offenses charged and then hope that the jury would not be convinced beyond a reasonable doubt of the existence of those elements.

It appears to us that the defendant's trial tactics would have been no different from what they were had the indictment alleged in terms that the heroin had ultimately been passed on to Green by Angle, or had the defendant and Angle been indicted separately with respect to the sales of January 30 and February 26, or had no mention of Angle been made in the fourth and seventh counts of the indictment.

To our minds there is no possibility that the defendant will be prosecuted again for either of the sales in question.

█ Hence, we conclude on this phase of the case that the variance between charge and proof, if there was a variance, was not a fatal one.

As to the complaint about the district court's refusal to propound to the jury four of the voir dire questions suggested by defense counsel, it appears that the questions were at least somewhat argumentative in form, and defense counsel concedes that the district court was not required to ask the questions in the precise form suggested by counsel. Counsel contends, however, that the district court should have explored more fully than it did the attitude of the prospective jurors about the legal presumption that a defendant is innocent until proven guilty and about the proposition that the burden is on the government to prove the guilt of the defendant by evidence and beyond a reasonable doubt. And counsel argues that the district court committed prejudicial error when it failed to go into those matters more deeply.

█ In passing upon this argument we do not minimize the importance of the role that a voir dire examination of prospective jurors should play in any trial, whether civil or criminal. On the other hand, we are required to recognize that the form and scope of a voir dire examination are matters that are left largely to the discretion of the trial judge and that it is only rarely that a supposed

deficiency in a voir dire examination will call for correction by an appellate court. *See, e. g., Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *United States v. Nance,* 502 F.2d 615 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975); *United States v. Bear Runner,* 502 F.2d 908 (8th Cir. 1974); *United States v. Thompson,* 490 F.2d 1218 (8th Cir. 1974). *See also* 2 Wright, Federal Practice & Procedure, Criminal, § 381.

We have given very careful consideration to the transcript of the voir dire interrogation of the jurors by the district court and have also considered certain preliminary instructions that were given to the jurors who were selected to try the case, and to the final binding instructions as to the law that were given to the jury. We find defendant's contention that the voir dire examination was deficient is without any real substance.

To start with, we find that the interrogation conducted by the district court was detailed, careful and searching and was designed primarily to find out whether the prospective jurors were free from bias or prejudice and whether they could give the defendant a fair and impartial trial irrespective, among other things, of the nature of the charge against the defendant, of the defendant's race, and of their prior experience as jurors. And other possibilities of unfairness or partiality were explored.

Nor did the district court overlook the legal concepts embraced in the suggested questions which the court declined to propound.

At a very early stage of the examination and before the trial court declined to propound the four questions with which we are concerned, the court, after reading the two counts of the indictment in which the defendant was charged, told the jury in plain terms that the indictment that had been returned by the grand jury was simply a method of bringing the defendant to trial and informing him of the charge against him, that the indictment was not evidence and afforded no basis for an inference of guilt, and that the government had the burden of proving the defendant guilty beyond a reasonable doubt. At a later stage of the voir dire, and after the district court had declined to propound the first four questions suggested by defense counsel, the court said:

> Now, ladies and gentlemen, you will have questions put to you and instructions put to you concerning the presumption of innocence and that the burden of proof is on the government and I will instruct you on those things and other things from time to time, but I want to know at this time if there is anybody on this panel who has any preconceived ideas about what the law is in this case or any other case. Now, you know a lot of people, you get some street corner law and you get some advice here and there and the other, but is there anybody who has got any idea about what the law is that is so fixed in your mind that you will disregard any instruction that I give you. In other words, will. you abide by my instructions as to what the law is as to the presumption of innocence, the burden of proof or any other instruction I give you in this case? If there's anybody who will not, raise your hand.

No hand was raised.

And the district court also stated, " * * * if there's anybody here who for any reason cannot give both sides an absolutely fair and impartial hearing if they're chosen to serve here; if you can't do it, just raise your hand at this time." Again, no hand was raised.

Thereafter, a jury of twelve and one alternate was selected and sworn to try the case. Before opening statements were made the district court gave the jurors some preliminary instructions that included the following statement:

> Faithful performance by you of your duties is vital to the administration of justice. The law applicable to this case will be contained in the instruc-

tions I give you during the course of the trial and it is your duty to follow all such instructions * * * "

In the course of the district court's final charge to the jury, that body was fully, fairly and correctly instructed about presumption of innocence, burden of proof, and reasonable doubt, and the court specifically told the jury that the law never imposes upon a defendant in a criminal case the burden of calling or duty to call witnesses or produce witnesses in his behalf.

■■ As to the voir dire examination itself, we think that the district court adequately protected the procedural rights of the defendant when it told the jury that the indictment was not any evidence of guilt and when it ascertained that the jurors would be willing to be governed by the court's instructions as to presumption of innocence, burden of proof, and other instructions of the court, and that the district court did not abuse its discretion when it refused to ask the members of the panel whether they "argued" with the legal principles that have been mentioned. The jurors were obligated by their oath to accept the law as given them by the court and to return a verdict in accordance with the law and the evidence, and the presumption is that the jurors did their duty.

A voir dire problem quite similar to the one that we have just discussed was before the Court of Appeals for the Third Circuit recently in *United States v. Wooton,* 518 F.2d 943 (3d Cir. 1975), and our conclusion that the district court did not err in this case as far as scope of voir dire is concerned accords with the result reached in that case.

No error appearing, the judgment of the district court is affirmed.