# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-1232

———————

Mark Andrew Harrington,  *
                          *
       Appellee,          *
                          *    Appeal from the United States
   v.                    *    District Court for the
                          *    Northern District of Iowa.
State of Iowa,            *
                          *
       Appellant.         *

———————

Submitted:  October 24, 1996

Filed:  March 26, 1997

———————

Before WOLLMAN, FLOYD R. GIBSON, and BEAM, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

The State of Iowa appeals from the district court's grant of Mark Andrew Harrington's petition for habeas corpus relief under 28 U.S.C. § 2254. We reverse.

**I.**

In the early morning hours of February 20, 1982, Larry Johnson was stabbed to death outside a residence at 205 Rebecca Street in Sioux City. Mark Kemp was stabbed inside the residence and survived his wounds. Christina Nieman, who was also inside the residence, was injured as well. Harrington, who admitted the

stabbings to both his sister and police officers shortly after the event, was arrested and charged with the stabbings.

Harrington was convicted of second-degree murder and willful injury. The Iowa Court of Appeals reversed, holding that the trial court's refusal to allow defense counsel's offer of proof on an alleged threat to Harrington by a third party mandated a new trial. The Iowa Supreme Court vacated the Court of Appeals's decision, reinstating Harrington's conviction. State v. Harrington, 349 N.W.2d 758 (Iowa 1984). Harrington sought state post-conviction relief, asserting that the trial court had unduly limited defense counsel's ability to cross-examine witnesses against him and that the trial judge's conduct during trial denied him a fair trial. The Iowa Court of Appeals affirmed the post-conviction court's denial of relief, and the Iowa Supreme Court denied Harrington's request for further review.

Harrington then filed this section 2254 petition. The district court granted the petition, finding that Harrington's right to confront witnesses was violated and that the trial judge's conduct had the effect of denying Harrington a fair trial.

## II.

The State first challenges the district court's finding that the trial court violated Harrington's Sixth Amendment right of confrontation. The Sixth Amendment "'guarantees an *opportunity* for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)). A defendant states a violation of the Confrontation

Clause if he shows that "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." Id. at 680; see Layton v. South Dakota, 918 F.2d 739, 741-42 (8th Cir. 1990). If the information comes before the jury on cross-examination, although not in the form desired by the defense, it is unlikely we will find constitutional error. See Layton, 918 F.2d at 742; United States v. Klauer, 856 F.2d 1147, 1149 (8th Cir. 1988).

The district court first found that the trial court erroneously prohibited defense counsel from cross-examining Kemp about what type of boots he was wearing the night of the stabbing and what type of boots he owned. The district court concluded that this line of inquiry was important because a "waffle-stomper" footprint was part of the evidence against Harrington, and the defense's theory was that Kemp, rather than Harrington, could have killed Johnson.

The record reveals, however, that defense counsel in fact elicited the desired information during cross-examination. Defense counsel was permitted to ask Kemp, "Do you remember what kind of boots you were wearing?" Kemp answered, "I was wearing my moccasins." Defense counsel then inquired, "Snow on the ground?" and Kemp replied, "Yes, there was." Defense counsel again asked, "Wearing your moccasins?" and Kemp again replied, "Yes, I was." Moreover, defense counsel was able to cross-examine Kemp about what types of boots he owned. Kemp testified that he owned a pair of biker boots with smooth soles and two pairs of hiking boots with a waffle-stomper pattern on the soles.

The district court found that the trial court erred in prohibiting cross-examination of Kemp about why he carried a knife

-3-

and for what purposes he used the knife.  Although we agree with the district court that Kemp's answers to these questions were relevant to the defense's theory that Kemp and not Harrington stabbed Johnson, we do not agree that these rulings constituted constitutional error, because the desired information was ultimately elicited.

Defense counsel was permitted to ask, "When Mark Harrington was fighting with you, did you have a knife?"  Kemp responded, "No."  Defense counsel then queried, "But on that day and up to February 20, 1982, you carried a knife with you all the time; is that correct?" and Kemp answered "That's correct."   Kemp was asked why he carried a knife,  and he responded, "I don't know.  Just carried it.  It was legal."  Kemp also described his knife at length, saying that it "had gold trim on it, and it had brown wood.  Silver blade.  It was a Buck 112."  Kemp also stated, "the blade is 2 5/8 inches long because I busted the tip on it.  I measured it."

The only question not answered was whether Kemp had ever stuck Harrington with a knife prior to the night in question (and we note that defense counsel did not renew this question during his direct examination of Kemp as a defense witness).  In light of the cross-examination allowed and Kemp's testimony regarding his habit of carrying a knife and his description of the knife, we conclude that a reasonable jury would not have received a "significantly different impression" of Kemp had that one question been permitted.  See Van Arsdall, 475 U.S. at 680; Layton, 918 F.2d at 741-42.

The district court also found that the trial court erred in sustaining objections to cross-examination of Kemp regarding how Kemp left the residence at 205 Rebecca Street.  Defense counsel initially asked Kemp through which door he left the residence, and Kemp responded, "I don't remember."  Defense counsel then prompted,

"Could it have been the back door?" Kemp replied, "I doubt it." Defense counsel then asked, "Probably the front door?" Kemp replied, "Probably." Defense counsel then asked, "which direction would you probably have gone as you left the front door?" and Kemp responded, "I really don't remember." The prosecution then objected to defense counsel's next question, "Could you have gone south?" The trial court sustained the objection on the ground that it had been asked and answered.

The Confrontation Clause "does not prevent a trial judge from placing limits" on cross-examination, and "'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits'" on interrogation that is harassing, repetitive or only marginally relevant. See United States v. Willis, 997 F.3d 407, 415 (8th Cir. 1993) (direct appeal) (quoting Van Arsdall, 475 U.S. at 679). The district court found that the trial court's limitation on cross-examination regarding how Kemp exited the house impaired defense counsel's ability to test Kemp's memory. Although this may have been true in a theoretical sense, additional cross-examination would not have given a reasonable jury a "significantly different impression" of Kemp's ability to remember than his initial answer. Accordingly, the trial court's ruling did not constitute constitutional error. See Van Arsdall, 475 U.S. at 680; Layton, 918 F.2d at 741-42.

The district court found that it was error for the trial court to prohibit a question to Kemp about why he threw away a pool cue he was carrying as a club when the police approached him as they investigated the stabbings. Defense counsel first asked, "Tell me again why you got rid of the pool stick when you saw the police car?" and Kemp replied, "I didn't want him to think I was going to assault him with it." Defense counsel then asked, "Were you afraid that the police might start slamming you up against the car?" The

trial court sustained the prosecutor's objection to the question. Whether or not this ruling was correct, Kemp's answer, like his answer to the question discussed immediately above, would not, regardless of what the answer might have been, have given a reasonable jury a "significantly different impression" of Kemp.

We have also considered other rulings that the district court did not specifically cite as constitutional error, as well as Harrington's additional allegations of trial court error. Although we agree that a number of the trial court's rulings, especially those based upon the objection that the question went beyond the scope of direct examination, appear to be hypertechnical, our review of the record convinces us that those rulings, whether viewed singly or in combination, did not constitute constitutional error in light of the fact that nearly all of the information defense counsel sought was ultimately elicited.

Even assuming, *arguendo*, that the above rulings constituted constitutional error, habeas relief is not automatic, for a violation of the Confrontation Clause can constitute harmless error. See Van Arsdall, 475 U.S. at 684; Lufkins v. Leapley, 965 F.2d 1477, 1480 (8th Cir. 1992). Because it is not clear whether the Iowa courts reviewed Harrington's claims, in whole or in part, for harmless constitutional error, we will apply the harmless error standard of review enunciated in Chapman v. California, 386 U.S. 18 (1967), rather than that set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Starr v. Lockhart, 23 F.3d 1280, 1292 (8th Cir. 1994); Orndorff v. Lockhart, 998 F.2d 1426, 1430 (8th Cir. 1993). In assessing the harmlessness of an erroneous limitation on cross-examination, we consider the importance of the witness's testimony to the entire case, whether the testimony was cumulative, whether corroborating or contradicting evidence existed, the degree

of cross examination actually permitted, and the overall strength of the government's case against Harrington.  See Van Arsdall, 475 U.S. at 684.

As the Iowa Supreme Court noted, the evidence of Harrington's guilt was "overwhelming."  See Harrington, 349 N.W.2d at 761.  Harrington admitted both to his sister and to police officers that he had stabbed and perhaps killed two people.  Harrington admitted at trial that he had wanted to "get" Johnson.  He also testified that in one of the two versions of the events that he remembered, he stabbed Johnson several times.  He testified that he remembered Johnson gasping for breath.  At another point, Harrington testified that he stabbed Johnson "three or four times."  When asked to identify on a photo of Johnson's body which stab wounds he had inflicted, Harrington said, "I could not tell.  It happened so quick."  He also admitted that he dragged Johnson's body some distance after the stabbing.  Furthermore, Harrington testified that he stabbed Kemp several times.  The combination of the scope of cross-examination allowed and the overwhelming evidence against Harrington satisfies us that any error in limiting cross-examination was harmless beyond a reasonable doubt.  See Chapman, 386 U.S. at 24; Anderson v. Groose, 106 F.3d 242, 246 (8th Cir. 1997).

## III.

The State next challenges the district court's holding that certain statements, gestures, and rulings by the trial judge constituted judicial misconduct.  Specifically, the district court found that the judge's statement that "it may be of some interest to counsel that I'm not taking notes on this line of inquiry" when sustaining an objection by the prosecution, gestures the judge

allegedly made, and various evidentiary rulings--including a denial of an offer of proof by defense counsel--injected an unconstitutional taint into Harrington's trial.

Trial judges have wide latitude in conducting their trials, see Willis, 997 F.2d at 415, but they must carefully preserve "'an attitude of impartiality'" and scrupulously avoid "'giving the jury an impression that the court believes the defendant is guilty.'" United States v. Scott, 26 F.3d 1458, 1464 (8th Cir. 1994) (quoting United States v. Gleason, 766 F.2d 1239, 1243 (8th Cir. 1985)). We are reluctant to grant habeas relief based on a few isolated comments, especially those made during the course of a long trial. See United States v. Warfield, 97 F.3d 1014, 1027 (8th Cir. 1996) (direct appeal), cert. denied, 65 U.S.L.W. 3598 (Mar. 3, 1997). In considering judicial misconduct on habeas review, we examine the trial judge's behavior in the context of the entire trial to determine whether the behavior was so prejudicial as to violate due process. See Nassar v. Sissel, 792 F.2d 119, 122 (8th Cir. 1986) (citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)); Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995), cert. denied, 116 S. Ct. 1549 (1996).

We find that the statements and gestures of the trial judge over the course of the two-week trial were not so prejudicial as to violate due process. In Scott, we found that the combination of the trial judge's telling the jury that a comment by defense counsel was "inappropriate," appearing "agitated" with defendant, and criticizing the defendant's response to a question on cross-examination, did not constitute judicial misconduct. See Scott, 26 F.3d at 1464-65. We found Scott to be unlike United States v. Van Dyke, 14 F.3d 415 (8th Cir. 1994), where we found judicial misconduct because the comments and conduct of the trial judge "reflect[ed] excessive interplay between the district court and

witnesses," and "probably so impressed the jury with his partiality to the prosecution that this became a factor in determining defendant's guilt." Id. at 423.

In the present case, the trial judge's comment that "it may be of some interest to counsel that I'm not taking notes on this line of inquiry," when sustaining the prosecution's objection, related to a line of questions to Kemp regarding whether he had lied about being involved in a fight.  The judge had sustained a previous objection on that line of inquiry on the ground that Kemp had already testified sufficiently to lying about the fight, and his comment simply reminded counsel to obey the court's rulings.

Similarly, we do not believe that the judge's gestures, which are described neither in the district court's opinion nor in Harrington's brief, would have indicated to the jury that the judge favored the prosecution's case.  In a dialogue with the attorneys in chambers, the judge explained that his gestures represented "feelings about some of the evidence that I have heard that I think is purely irrelevant," not "feelings about the case" itself.  Although the jury's impression and not the judge's actual motivation is what matters for our inquiry, we are confident that when considered in context and in light of the length of the trial, the gestures were not so prejudicial as to violate due process.

We have also considered the assertion that the court's various evidentiary rulings throughout the trial created an impression to the jury that the court favored the prosecution and discredited the defense's arguments.  The district court found that the trial court's refusal to allow defense counsel's offer of proof during its direct examination of Harrington "is indicative of the trial judge's [im]patience with defense counsel in his questioning."  We agree with the Iowa Supreme Court, however, that the trial court's

ruling was not an abuse of discretion.  See Harrington, 349 N.W.2d at 761. We conclude that in light of the evidence against Harrington, the rulings throughout trial, even when considered cumulatively, were not so prejudicial as to render the trial unfair in a constitutional sense. Likewise, any comments the judge made during the presentation of evidence generally related to the management of a criminal trial, for which trial judges have broad discretion, see Warfield, 97 F.3d at 1024, and did not deprive Harrington of a fair trial.

The judgment is reversed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.