# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2975

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Bruce A. Beckman, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

No. 99-2978

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * |
| Thomas Kelly, | * |
| | * |
| Defendant-Appellant. | * |

_____

Submitted: March 15, 2000

Filed: August 2, 2000

_____

Before RICHARD S. ARNOLD, LAY, and BEAM, Circuit Judges.

_____

LAY, Circuit Judge.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 1997, Bruce A. Beckman and Thomas Kelly, along with six other defendants, were charged by indictment with Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On March 13, 1997, these same individuals were charged by Superseding Indictment, altering the time frame but not the crimes charged. Prior to trial, a number of the defendants changed their pleas and entered guilty pleas. Specifically, George Bradstream, Davia Haines, John Root, and Gene Rossman each entered into plea agreements by which they could receive recommended reduced sentences in exchange for providing "substantial assistance" to the prosecution. The remaining defendants, Beckman, Kelly, and two others, proceeded to trial, which began June 22, 1998. On June 29, 1998, the district court declared a mistrial due to the jury's inability to reach a verdict. Following this trial, but prior to retrial, the other two defendants entered guilty pleas, leaving Beckman and Kelly to be re-tried beginning April 6, 1999. A guilty verdict was returned against each on April 9, 1999.

The conspiracy at issue centered on Patrick Mitchell, who had moved to South Dakota in early 1995 and began importing methamphetamine from his prior home state of Oregon. Mitchell made driving trips from South Dakota to the West Coast with various individuals, including Beckman, to obtain methamphetamine. Mitchell initially imported smaller amounts of the drug, but with the passage of time and the growth of the conspiracy, he eventually transported larger quantities. The drugs were sometimes stored at Beckman's residence. Mitchell temporarily lived at Kelly's house and provided Kelly with drugs in lieu of rent.

During the course of the conspiracy, Mitchell's ex-wife, Dana Chaffee, also moved from Oregon to South Dakota, and the relationship between the two resumed. Chaffee assisted with the drug operation by traveling with Mitchell, keeping records, distributing drugs, and collecting money, all at Mitchell's direction. Because of her involvement, Chaffee was able to identify both Beckman and Kelly as being participants in the drug conspiracy.

It was after Mitchell's death in the fall of 1996, that evidence of the drug conspiracy surfaced and the eight defendants were indicted.

## II.    DISCUSSION[1]

### A.    BECKMAN'S APPEAL

On appeal, Beckman claims:  1) the district court erred by failing to specifically voir dire potential jurors on the presumption of innocence and the government's burden of proof; 2) the district court insufficiently instructed the jury on the government's control of sentence reduction in connection with plea bargains, resulting in insufficient instruction on witness credibility; 3) the district court erred by failing to give a supplemental jury instruction on the buyer/seller principle in response to a jury question; and 4) the evidence was insufficient to sustain the verdict.  We affirm Beckman's conviction on all issues.

---

[1]In his briefs to this court, Kelly submits that, pursuant to Federal Rule of Appellate Procedure 28(i), he joins the issues and arguments set forth in Beckman's briefs.  The government contests the sufficiency of this blanket, non-specific joinder. Finding no merit to the issues raised by Beckman, and in light of the fact that our disposition of the claims briefed by Kelly affords him a new trial, we need not decide whether Kelly properly joined Beckman's issues.

1.    Voir Dire

Beckman contends that the district court erred in conducting voir dire by failing to specifically question potential jurors regarding the presumption of innocence and the government's burden of proving all charges beyond a reasonable doubt.  We disagree.

It is undisputed that voir dire is critical to ensuring a defendant's right to trial by an impartial jury.  In Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (citations omitted), Justice White, speaking for the plurality, stated:

> *Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. Similarly, lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts.

It is also well-settled, however, that district court's have broad discretion in conducting voir dire.  See id. at 188-89.  When no contemporaneous objection is made to the conduct of voir dire, as is true in this case,[2] this court reviews challenges under the plain error standard.  See United States v. Van Chase, 137 F.3d 579, 582 (8th Cir. 1998).  When considering challenges to voir dire, "the central inquiry is whether the overall jury examination, coupled with the jury charge, adequately protects the

---

[2]During voir dire, the district court held two bench conferences to inquire of all counsel whether there were further lines of inquiry necessary.  At no point did any counsel request further instruction or inquiry on the presumption of innocence or burden of proof.

defendant from prejudice." United States v. Eagle Hawk, 815 F.2d 1213, 1219 (8th Cir. 1987).

In United States v. Cosby, 529 F.2d 143 (8th Cir. 1976), this court faced a question similar to that presented here. On appeal, the defendant in Cosby argued that the district court, while not bound by the language of the suggested questions, should have more thoroughly explored the notions of presumption of innocence and governmental burden of proof. The Cosby court, after reviewing the transcript of the voir dire and jury instructions, rejected this argument in light of the court's general instructions on the presumption and burden, the overall thoroughness of the voir dire inquiry, and the inquiry of the potential jurors regarding whether they could abide by the court's instructions. See id. at 148-49.

On a number of occasions during voir dire in this case, the district court generally addressed the issues of presumption of innocence and governmental burden. Specifically, the court stated:

> [D]efendants are presumed to be innocent of this crime and that presumption stays with them throughout the trial until the jury returns a verdict after due deliberation that the defendants either are guilty or not guilty of the offense for which they have been indicted.
>
> And the burden of proof based upon that presumption is by what is called proof beyond a reasonable doubt.

Further, the district court discussed and instructed on these principles on at least two other occasions. We recognize that the district court did not specifically ask each potential juror whether they comprehended and could apply these legal principles; however, it did instruct the panel that it must accept the law as provided by the court and then asked for a show of hands of those who could do so. The record reveals that every juror's hand was raised.

We find that the overall voir dire and instructions in this case adequately apprized the potential jurors of the presumption of innocence and the government's burden of proof. Additionally, this court should and does assume that a jury, sworn by oath to follow the law, did, in fact, do so. Therefore, we hold that a district court need not ask prospective jurors specific questions on their ability to apply instructions on these principles, especially when no contemporaneous objection is made. Accord United States v. Miller, 758 F.2d 570 (11th Cir. 1985) (holding court was not required to ask specific questions of potential jurors regarding burden of proof, presumption of innocence, reasonable doubt, and whether they agreed with such principles); Grandsinger v. United States, 332 F.2d 80 (10th Cir. 1964) (finding no abuse of discretion where court refused to explain legal principles of reasonable doubt and presumption of innocence and refused to ask whether prospective jurors would give accused the benefit of these principles); United States v. Price, 577 F.2d 1356 (9th Cir. 1978) (finding no error when court refused to instruct on presumption of innocence and burden of proof and failed to ask jurors whether such laws were fair, where court did ask if jurors would follow instructions and, at the close of trial, instructed on such principles); United States v. Wooton, 518 F.2d 943 (3d Cir. 1975) (finding no abuse of discretion in court's refusal to propound requested questions regarding whether panel could accept and apply legal principle of proof beyond reasonable doubt); United States v. Gillette, 383 F.2d 843 (2d Cir. 1967) (finding no abuse of discretion where court refused to ask jury panel whether legal principles of reasonable doubt and presumption of innocence were understood). But cf. United States v. Blount, 479 F.2d 650 (6th Cir. 1973) (holding, where specific request is made, a court's failure to specifically inquire of prospective jurors on ability to accept and abide by the presumption of innocence is a denial of right to impartial jury); United States v. Hill, 738 F.2d 152 (6th Cir. 1984) (holding, where specific request is made, court's failure to ask questions of prospective jurors regarding their understanding and ability to apply instructions on burden of proof and presumption of innocence is reversible error). We hold, following the majority of circuit courts, the district court did not plainly err in

failing to more specifically or individually question potential jurors on the legal principles at issue.

## 2. Jury Instructions

Beckman asserts that the district court's instructions to the jury did not adequately instruct on the government's role in sentencing departures so as to allow a proper assessment of witness credibility. We review the district court's jury instructions for abuse of discretion. See Grain Land Coop v. Kar Kim Farms, Inc., 199 F.3d 983, 995 (8th Cir.1999). In conducting such review, this court must determine "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, 'fairly and adequately submitted the issues in the case to the jury.'" Id. (quoting White v. Honeywell, Inc., 141 F.3d 1270, 1278 (8th Cir. 1998)). [3]

_____

[3]In its brief to this court, the government notes that when a defendant fails to preserve a claim of instructional error, this court's review is for plain error. See United States v. McNeil, 184 F.3d 770, 777 (8th Cir. 1999). We note that during the colloquy on the jury instructions both Beckman's and Kelly's attorneys voiced objections to Instruction 13 and Beckman's attorney offered Proposed Instruction 5. When rejecting Proposed Instruction 5, the district court stated that Instruction 13 was the more accurate statement of law. Because under either standard of review the district court's instructions were proper, we need not specifically address whether this exchange was sufficient to preserve the claim of instructional error for appellate review.

The issue of plea bargaining and its impact on sentencing and credibility was discussed in Jury Instruction 13.[4] Beckman objected to this instruction, arguing that it was both inaccurate and an insufficient advisement of the government's exclusive capacity to decide whether a witness provided sufficient prosecutorial help to warrant a motion for downward departure. Beckman offered Proposed Instruction 5 as an alternative. Proposed Instruction 5 emphasized the prosecutor's role and specifically instructed the jury to consider the possibility that the government's power might motivate a witness to craft testimony accordingly.

As this court stated in United States v. Kabat, 797 F.2d 580, 588 (8th Cir. 1986):

It is not grounds for reversal that the charge might have been differently, or even better, worded; a district court has wide discretion on choice of

---

[4]Instruction 13 states, in pertinent part:

Plea agreements, grants of immunity, and consideration for reduced sentences based upon cooperation and testimony in the trial of others are recognized by law as legitimate tools of law enforcement. The wisdom of a plea agreement and decision of prosecutors not to prosecute persons involved in criminal conduct are the exclusive decision for the prosecution and not matters for your consideration. Sentencing decisions are the exclusive responsibility of the Court once a plea agreement is entered into by the parties. Likewise, a further reduction in the sentence of cooperating witnesses is the exclusive decision of the Court based upon the government's motion for a sentence reduction upon the filing of such motion. The Court is free to exercise its independent decision as to whether to grant the motion and, if granted, the extent of the departure from either a mandatory minimum or a sentence below the United States Sentencing Guidelines. In an appropriate case, the Court can provide a sentence below the statutory mandatory minimum without a motion by the government to do so.

language, and we will not find that discretion abused when the instructions as a whole accurately and adequately state the relevant law.

Instruction 13 was an accurate statement of law, touching upon the role of each party in sentencing. Furthermore, we note that a number of the prosecution's witnesses testified to the government's role in moving the sentencing court for downward departure based on their cooperation. In light of this, we find the jury was sufficiently aware of the sentencing process and any potential a cooperating witness may have to please the prosecutor. Thus, when taken as a whole, the instructions in this case accurately set forth the applicable law and we find no abuse of discretion on the part of the district court in giving Instruction Number 13 and failing to give Proposed Instruction Number 5.

### 3. Supplemental Jury Instruction

During jury deliberation in the second trial, members of the jury sent a written question to the court asking: "If an amount of Meth. is distributed from one person to another. Are both parties involved in conspiracy to distribute or is only the person giving the drugs part of the conspiracy? and the other just guilty of possession?" Following a discussion with counsel in chambers, the district court decided not to give any supplemental instruction. Instead the district court referred the jury back to Instructions 8 and 9, which set forth the elements and definition of a drug conspiracy, and instructed the jury not to single out any one instruction during deliberation. Beckman asserts that in light of this court's expressed approval of buyer/seller instructions and the fact that his proffered defense was that of merely being a buyer, the district court abused its discretion by failing to give a supplemental instruction. We disagree.

A trial court's response to a jury's request for supplemental instruction is a matter within the sound discretion of the trial court. See United States v. Smith, 104

F.3d 145, 148 (8th Cir. 1997) (citing United States v. White, 794 F.2d 367, 370 (8th Cir. 1986)). When a jury explicitly requests supplemental instruction, a trial court "must take great care 'to insure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial.'" Id. (quoting United States v. Skarda, 845 F.2d 1508, 1512 (8th Cir. 1988)). This court has recognized that, in responding to a jury's request for supplemental instruction, it may be proper at times to simply refer the jury back to the original instructions. See United States v. Gibbons, 968 F.2d 639, 646 (8th Cir. 1992).

Admittedly, this court has expressed approval of jury instructions marking a distinction between buyers and sellers in drug conspiracy cases. See United States v. Cabbell, 35 F.3d 1255 (8th Cir. 1994). In Cabbell, the court initially instructed on the buyer/seller distinction, noting that transient sales where the buyer is purchasing drugs only for personal use do not, standing alone, make a buyer a co-conspirator with a seller. This court accepted such instruction as an accurate statement of the law. Critically, however, approval of the initial instruction in Cabbell does not necessitate an identical instruction be given in every case, so long as the instructions fairly and adequately set forth the issues and applicable law.

In the present case, the district court's initial instructions accurately and thoroughly provided the elements and definition of the crimes charged. We cannot say that it was an abuse of discretion for the court to refer to the jury back to the proper and adequate instructions already given.

4.    Sufficiency of the Evidence

Beckman argues that the evidence presented by the government is insufficient to sustain his conviction for conspiracy to distribute methamphetamine. He contends that the evidence presented was internally conflicting, incredible, tainted by the plea agreements, and, at most, established that he bought and used methamphetamine for

personal use. We disagree and find the evidence more than sufficient to uphold Beckman's conviction.

The standard of review for sufficiency of the evidence claims is whether, in the light most favorable to the government, and giving the government the benefit of all reasonable inferences, there is substantial evidence to support the jury's verdict. See United States v. Gaines, 969 F.2d 692, 696 (8th Cir. 1992). Both direct and circumstantial evidence can be the basis of a conviction. See United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992). To convict an individual of conspiracy, the government must prove "that there was a conspiracy with an illegal purpose, that the defendant was aware of that conspiracy, and that he or she knowingly became a part of it." United States v. Mosby, 177 F.3d 1067, 1069 (8th Cir. 1999) (citing United States v. Bass, 121 F.3d 1218, 1220 (8th Cir.1997)). "'Once the government establishes the existence of a drug conspiracy, only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction.'" Id. (quoting United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir.1996)).

When viewed in the light most favorable to the government, the evidence presented at trial reveals: Beckman was seen receiving and admitted to purchasing methamphetamine from Mitchell; Beckman took trips to the West Coast with Mitchell to aid in the transportation of methamphetamine and to invest, up-front, in the purchase of the drugs; Mitchell's drug ledger contained entries demonstrating that Beckman had purchased drugs and continued to carry debts on such deals; the amount of debt evidenced by the ledger supports the idea that Beckman was not a mere buyer; Beckman stored drugs on his property for Mitchell; and Beckman assisted in the "break

down" process of the methamphetamine.[5]  We find this evidence more than sufficient to support Beckman's conviction for conspiracy to distribute.

After having thoroughly reviewed the record and each of the four issues raised by Beckman, we find no prejudicial ground of error and affirm his conviction.

B.    KELLY'S APPEAL

On appeal, Kelly argues:  1) the district court erred by unconditionally admitting into evidence a ledger, address books, and pocket pal prior to making the requisite foundational findings; 2) his right to confrontation was violated by the district court's limitation of cross-examination of two witnesses; and 3) the prosecutor committed prosecutorial misconduct in closing argument by suggesting facts not in the record.  We reverse and remand Kelly's case for a new trial.

1.    Admission Into Evidence of Ledger, Address Books and Pocket Pal[6]

Kelly argues that the district court erred in unconditionally admitting into evidence a number of exhibits, including a ledger, address books, and a pocket pal, prior to making required foundational findings.  We reject Kelly's contention.

We review a district court's evidentiary decisions for abuse of discretion and will reverse only if an error substantially prejudiced the outcome.  See United States v.

_____

[5]"Breaking down" drugs is the process by which a large quantity of drugs is divided and carefully weighed out into smaller portions for purposes of resale and distribution.

[6]All three pieces of evidence raise the same issues on appeal and were briefed as a single issue by the parties.  As our reasoning in finding no error in their admission is identical, we unify our discussion of them.

Roach, 164 F.3d 403, 408 (8th Cir. 1998). Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if made by "a coconspirator of a party during the course and in furtherance of the conspiracy." It is well-established that to admit such a statement the government must demonstrate, by a preponderance of the evidence, "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978).[7] See also United States v. Guerra, 113 F.3d 809, 813 (8th Cir. 1997); United States v. Escobar, 50 F.3d 1414, 1423 (8th Cir. 1995). A district court's determination that these specific conditions have been met is reviewed under the clearly erroneous standard. See United States v. Oseby, 148 F.3d 1016, 1023 (8th Cir. 1998). When determining whether a conspiracy existed, a court may consider the co-conspirator's statement itself. See Bourjaily v. United States, 483 U.S. 171, 181 (1987).

On direct examination, Chaffee, the government's first witness, testified that the ledger, a small, spiral notebook, was used by Mitchell to keep track of money owed and paid on methamphetamine sales. She further testified that she had seen him buy the ledger and write in it, she recognized his handwriting, and she wrote in the ledger on occasion at his direction. The writing in the ledger consisted solely of initials, nicknames, and numbers, which Chaffee testified she could decipher. Additionally, Chaffee identified two address books which she testified she had purchased for Mitchell and that he used to keep track of contacts. She testified similarly regarding the pocket pal. The government offered these exhibits into evidence and Kelly's counsel objected on grounds of hearsay, improper foundation, lack of due process, and

_____

[7]Kelly contends that admission of such a statement also requires sufficient indicia of reliability to satisfy the Confrontation Clause. As we noted in United States v. Roach, 164 F.3d 403, 409 n.5 (8th Cir. 1998), that proposition was rejected in Bourjaily v. United States, 483 U.S. 171, 182-83 (1987).

a violation of the Confrontation Clause. The district court admitted the exhibits without making any foundational findings on the record. Chaffee then continued to testify, indicating that, according to the notations in the ledger, Kelly owed Mitchell $1,500 for methamphetamine purchased. It was only after this testimony that the district court held a sidebar and found: 1) a conspiracy existed; 2) defendants and declarant were arguably a party thereto; and 3) the declarations as to the sale of drugs in the ledger were in furtherance of the conspiracy.

Kelly argues that at the time of this admission, the government had established, at most, the existence of a conspiracy, but not his membership therein. Further, Kelly contends that the ledger itself did not establish his membership by a preponderance of the evidence, because the mere existence of "TK" and "Tom" next to numbers was insufficient evidence. Thus, Kelly argues that the district court erred when it admitted the evidence. We disagree.

The evidence presented to the district court at the time it made its preliminary finding of admissibility demonstrated: Chaffee and Mitchell were engaged in a conspiracy to sell methamphetamine; the ledger itself contained reference, albeit cryptic, to Kelly; the purpose of the ledger was bookkeeping, thus demonstrating that the statements therein were in furtherance of the conspiracy; and Kelly had knowingly received methamphetamine from Mitchell. This evidence is sufficient to satisfy the requisite findings.

Even if this court were to find the evidence insufficient at the time of admission, any error from premature admission of the exhibits was harmless. We note that the district court eventually made specific findings on the foundational elements, stating: "The evidence is clear in this case that a conspiracy did exist, that the defendants and the declarant were part of that conspiracy, and that the statements which were admissible were made in furtherance of the conspiracy." In light of the fact that the

-14-

evidence would eventually have been admissible[8] and the lack of a showing that the arguably premature admission carried any prejudice, we find any error harmless.

## 2. Right to Confront and Cross-Examine

Kelly argues that his Sixth Amendment right of confrontation was violated when the district court impermissibly restricted his cross-examination of two witnesses, George Bradstream and Sandra Basham. We agree.

The Sixth Amendment guarantees a defendant an opportunity for effective cross-examination of witnesses, including inquiry into motivation and bias. See United States v. Warfield, 97 F.3d 1014, 1024 (8th Cir. 1996). The Confrontation Clause is not, however, without limit; courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). See also Harrington v. Iowa, 109 F.3d 1275, 1278 (8th Cir. 1997). A critical factor in determining whether the right to confrontation has been violated is whether defendant had other means available to obtain the same effect as the excluded inquiry. See Warfield, 97 F.3d at 1024 (citing United States v. Campbell, 845 F.2d 782, 788 (8th Cir. 1988)). If a reasonable jury might have received a significantly different impression of a witness' credibility had counsel been permitted to pursue the proposed line of cross-examination, defendant has stated a Confrontation Clause violation. See Harrington, 109 F.3d at 1277. "Absent a clear abuse of discretion and a showing of prejudice, we will not reverse a district court's ruling

---

[8]At oral argument before this court, counsel for Kelly conceded that if the district court had made the findings on the record at the outset or had only conditionally admitted the evidence initially, the instant argument would not stand because the items would have been properly admitted.

limiting cross-examination of a witness on the basis that it impermissibly infringed upon the defendant's right of confrontation." United States v. Brown, 110 F.3d 605, 611 (8th Cir. 1997).

We find the district court's limitation on the cross-examination of each of these two critical witnesses violated Kelly's Sixth Amendment right of confrontation and that such limitation was not harmless.

a) Examination of Bradstream

On direct examination by the government, Bradstream testified he met Mitchell at Kelly's residence, he initially purchased methamphetamine from Kelly while Mitchell resided at Kelly's house, and he used methamphetamine with Kelly on multiple occasions. Further, he testified he had known Kelly for over twenty years, considered him a friend in the past, and still considered him a friend. On cross-examination, Kelly's attorney attempted to inquire into the scope of this friendship by asking Bradstream whether he had tried to have sex with Kelly's wife. The following exchange occurred:

Q.    You have told this jury that you still consider [Kelly] to be your friend today, don't you?

A.    Yes, I do.

Q.    You are as sure about that as you are about the rest of your testimony?

MR. VARGO:  Objection, Your Honor; argumentative.

THE COURT:  I am not sure where you are going, counsel. He has answered your question.

-16-

. . .

Q.  Now, you tried to have sex with Tom Kelly's wife, didn't you?

MR. VARGO:  Objection, Your Honor.

THE COURT:  Sustained.

Q.  (MR. RENSCH CONTINUING:)  Did you ever have any controversy with Tom Kelly about his wife?

A.  No.

Q.  Did you ever, while you were drinking, ask [Kelly's] wife to go to bed with you?

MR. VARGO:  Objection; relevance, Your Honor.

THE COURT:  Sustained.

Q.  (MR. RENSCH CONTINUING:) Do you think a friend would try to sleep with a friend's wife?

MR. VARGO:  Objection, Your Honor.

THE COURT:  Counsel, I have ruled on that objection twice now. Why do you -- do not persist in that line of questioning.

Following this, Kelly's attorney made an offer of proof that Bradstream had testified at the first trial that he had, in fact, asked Kelly's wife to sleep with him. He asserted that this testimony went to Bradstream's motivation and bias. The district court rejected this and disallowed the inquiry, finding that Bradstream had been thoroughly cross-examined on his plea agreement, believability, and his ability to recall events.

-17-

Further, the district court found that even if the testimony would arguably show bias, its probative value was outweighed by its prejudicial impact.

We disagree with the district court. Bradstream's testimony that he still considered Kelly a friend worked to buttress his credibility and create the inference that he had no motivation to lie. We find that impeaching and rebutting this inference was a critical factor in Kelly's defense. The additional information that could have been obtained through cross-examination could substantially have changed the impression the jury had of this important witness. Thus, we find the line of inquiry should have been allowed. In light of the fact that Bradstream was an important government witness, that his testimony regarding his "friendship" with Kelly bolstered his credibility, and that during the first trial, when the district court allowed the inquiry, a hung jury resulted, this court cannot say that the error was harmless beyond a reasonable doubt. Thus, we find that the district court impermissibly limited cross-examination so as to violate Kelly's Sixth Amendment right to confrontation.

b) Examination of Basham

On January 23, 1997, Kelly was arrested. Special Agent Sandra Basham of the Drug Enforcement Agency participated in this arrest pursuant to a federal arrest warrant and thereafter conducted a custodial interview of Kelly. Basham testified that Kelly admitted he had pooled money with friends to buy methamphetamine from Mitchell, sold drugs provided, accepted drugs in lieu of rent, handed out envelopes as per Mitchell's instructions, that "all his troubles began" with Mitchell, and that he knew Mitchell sold methamphetamine out of his garage while living there. On cross-examination, Kelly's attorney asked whether the interview with Kelly had been tape-recorded; Basham responded in the negative. In an attempt to pursue this line of inquiry, the following exchange took place:

-18-

Q.     Do you have access to tape-recording devices in that building if you want them?

MR. VARGO:  Objection, relevance.

THE COURT:  Sustained.

Q.     (MR. RENSCH CONTINUING:) Did you tape-record anything Tom Kelly said that day?

MR. VARGO:  Objection, relevance.

THE COURT:  Sustained.

Q.     (MR. RENSCH CONTINUING:)  Other than the report that you have had prepared in this case, are there any transcripts or notes detailing what he said?

MR. VARGO:  Objection; relevance, Your Honor.

THE COURT:  Overruled.

A.     Just the report I wrote.

Kelly argues that the ability to tape-record and the conscious choice not to do so were important pieces of information going to the veracity of Basham's written report and the credibility of Basham in general.[9]  We agree.

Admittedly, cross-examination of Basham did reveal that the written report was the only memorialization of the interview; however, the limited examination could not reveal why no recording occurred.  Testimony regarding the decision not to record a

_____

[9]At the first trial, Basham was allowed to answer this same line of questioning and indicated that she had access to tape recorders, and that, while DEA policy was apparently not to tape-record, she had done so in previous law enforcement jobs.

-19-

statement, despite access to such technology, could significantly alter the jury's perception of the accuracy of the written report and of a witness' credibility in general. This court has recognized that cross-examination of officers on the details of custodial interviews, specifically on whether the officer had access to a tape recorder, whether he or she used it, and the reasoning behind such decision, is important to a defendant's right of confrontation. See United States v. Brown, 110 F.3d 605, 611 (8th Cir. 1997); United States v. Molina, 172 F.3d 1048, 1060 (8th Cir. 1999). Thus, we find the inquiry should have been allowed.

In light of the fact that Basham was an important government witness testifying to allegedly inculpatory admissions and that this line of questioning was allowed in the first trial in which a hung jury resulted, we cannot say that the error was harmless beyond a reasonable doubt. Thus, we find that the limitation on cross-examination violated Kelly's Sixth Amendment right to confrontation.

### 3. Prosecutorial Misconduct

Kelly asserts that the prosecutor acted improperly by arguing facts not in the record during closing argument. Prosecutorial misconduct during closing argument may be grounds for reversal of a conviction. See United States v. Norton, 639 F.2d 427, 429 (8th Cir. 1981). Trial courts have broad discretion in controlling closing arguments, and this court will not reverse absent an abuse of discretion. See United States v. Segal, 649 F.2d 599, 604 (8th Cir. 1981).

This circuit has set forth a two-part test for reversible prosecutorial misconduct: 1) the prosecutor's remarks or conduct must have been improper; and 2) such remarks or conduct must have prejudicially affected defendant's substantial rights so as to deprive him a fair trial. See United States v. Macklin, 104 F.3d 1046, 1049 (8th Cir.1997); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). If this court reaches the second step, the factors we consider are: 1) the cumulative effect of the

misconduct; 2) the strength of the properly admitted evidence of the defendant's guilt; and 3) any curative actions taken by the trial court. See United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir.1996). The critical question, for purposes of review, is whether the argument of which the defendant complains was so offensive as to deprive the defendant of a fair trial. See United States v. Bohr, 581 F.2d 1294, 1301 (8th Cir. 1978).

At trial, the evidence revealed that Kelly was no longer employed as a truck driver, a position he had held for nearly twenty years. On cross-examination, the government asked Kelly whether he lost his job because he failed a drug test. Kelly emphatically denied this. During closing argument the government argued:

> Let's talk about the statement he made to Agent Basham that "All my problems started when I met Pat Mitchell." Ladies and gentlemen, his problems, as he describes them, are $400 debt and a guest who had lived in his house for three months who he didn't really want to live there, and the fact that he had used methamphetamine once with Pat Mitchell. All of this, ladies and gentlemen, took place a little over a year, year and a half, shy of a year and a half before Tom Kelly was arrested and interviewed. How would you say, ladies and gentlemen, that this $400 debt was the beginning of all your problems? All my problems started when I met Pat Mitchell. What problems? It only makes sense, ladies and gentlemen, if your problems that you are referring to are losing your job because you are using meth, not showing up on time when failing your drug test, of course, he denies. We talk about evaluating credibility.

Kelly's attorney objected to the reference to the drug testing on the ground that it assumed facts not in evidence. The court responded by stating:

> Ladies and gentlemen, you are entitled to resolve the facts based upon not only direct evidence, but any logical inference flowing from that evidence. Now, at this time of the trial the government counsel as well as defense counsel when they appear before you are entitled to argue those inferences logically received from the direct evidence, but remember that

-21-

with any counsel before you, what counsel say is not evidence. You may make your own determination as to what the evidence is and any logical inferences flowing there from.

The district court then instructed the government's attorney to proceed.

There is no evidence in the record that Kelly lost his job due to a failed drug test. In fact, the only evidence regarding a drug test in relation to Kelly's employment is Kelly's denial that he lost his job due to such test. Further, at oral argument before this court, the government's counsel conceded that while he believed Kelly had failed the test, there was no evidence one way or the other. During closing argument, an attorney's role is to assist the jury in analyzing, evaluating, and applying the evidence. Segal, 649 F.2d at 604. Arguments that transcend such boundaries are improper. See United States v. Risnes, 912 F.2d 957, 960 (8th Cir. 1990). The government's closing argument in this case did more than argue permissible inferences from the evidence, it asserted facts not in evidence and attempted to argue and imply inferences therefrom. This was clearly improper.

The government now asserts that even if such argument was improper there was no prejudice. We cannot agree. When we consider the cumulation of error in limiting cross-examination of two critical government witnesses, the improper final argument, and the inadequacy of the district court's instruction to the jury following objection to the improper final argument, we find the errors cannot be said to be harmless.

In light of the improper limitation of cross-examination and the improper and prejudicial final argument, we find that Kelly is entitled to a new trial.

## III.   CONCLUSION

The conviction of Kelly is hereby REVERSED and a new trial granted.  The conviction of Beckman is hereby AFFIRMED.

Judge Beam concurs in the result.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.