No. 95-2852

United States of America,  *
                           *
            Appellee,      *
                           *  Appeal from the United States
     v.                    *  District Court for the
                           *  Western District of Missouri.
Darrell B. Caldwell,       *
                           *
            Appellant.     *

Submitted:  February 14, 1996

Filed:  July 8, 1996

Before WOLLMAN, HEANEY, and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

On June 16, 1994, Darrell Caldwell was charged in a four-count indictment with conspiracy to manufacture and distribute marijuana (Count I), manufacturing marijuana (Count II), and possessing marijuana with the intent to distribute (Count III); the indictment also included one count of criminal forfeiture (Count IV). On September 6, 1994, Caldwell entered into a plea agreement with the government. In exchange for pleading guilty to Count III and agreeing to pay $5,000 cash in lieu of forfeiting the real property named in Count IV, the government dismissed the remaining two counts against Caldwell and promised to substantially reduce the charges against his wife, who was also named in the indictment.

On September 26, 1994, Caldwell moved the court to withdraw his guilty plea. While that motion was pending before the district court, Caldwell remitted $5,000 to the United States Marshal

Services in satisfaction of the forfeiture portion of the plea agreement. The government accepted the payment.  On December 9, 1994, the district court granted Caldwell's motion to withdraw his plea.  The government tried Caldwell on Counts I, II, and III but did not charge criminal forfeiture. On February 16, 1995, a jury convicted Caldwell on all counts.  On July 6, 1995, the court sentenced him to 360 months imprisonment, a $10,000 fine, and five years of supervised release.

Caldwell appeals his conviction and sentence.  He alleges multiple errors, including: (1) the court improperly limited his cross-examination of government witnesses, (2) evidence should have been suppressed due to the insufficiency of a search warrant, (3) his convictions violate the prohibition against double jeopardy because they follow a prior forfeiture, and (4) the court miscalculated his sentence under the sentencing guidelines.  We affirm Caldwell's conviction and remand the case to the district court for resentencing.

I.

Caldwell contends that the district court improperly limited his cross-examination of two government witnesses.  We review the district court's decision to limit cross-examination for an abuse of discretion. United States v. Balfany, 965 F.2d 575, 583 (8th Cir. 1992).  If the record establishes a violation of the rights secured by the Confrontation Clause of the Sixth Amendment, we must determine whether the error was harmless in the context of the trial as a whole.  Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986).

A.  Cross-Examination of Trooper Loring

Trooper Loring, an investigator with the Missouri State Highway Patrol, was one of the officers involved in the execution

2

of a search warrant at Caldwell's home and surrounding property.  The search warrant came at the culmination of an investigation launched in response to the discovery of large numbers of marijuana plants growing on property adjoining Caldwell's.  As part of his duties, Loring filed a report on the execution of the search warrant.

In his trial testimony, Loring offered several significant details about the search warrant execution that he had not included in his report.  At least twice during cross-examination, Caldwell's lawyer attempted to question Loring about his failure to note those details in his report.  The court sustained the government's objections to the questions accepting the government's position that none of the statements in the report were inconsistent with Loring's trial testimony, that he had been under no duty to record every detail in the report, and that the line of inquiry was argumentative.

We find no abuse of discretion in the trial court's rulings.  Caldwell's cross-examination of Loring was long and thorough.  The court reasonably determined that there was no objective basis for the defense's implicit argument that the damaging details, if true, would have been in Loring's report.  Having so determined, it was equally reasonable to curtail the cross-examination with respect to the omission of those details from the report.

### B.  Cross-Examination of Co-Defendant Jones

Gary Jones, Caldwell's first cousin, was indicted with Caldwell in Count I.  Jones made a deal with the government whereby he pleaded guilty to a reduced misdemeanor charge in exchange for his testimony against Caldwell.

On cross-examination, Jones acknowledged that he had used marijuana daily over a period of approximately fifteen years.  He

3

also admitted his involvement in the conspiracy to manufacture over 1,000 marijuana plants.  Caldwell's lawyer attempted to establish that Jones would have faced a minimum ten-year sentence had he not been permitted to plead to the lesser offense in exchange for his testimony.  The court, however, disallowed any such inquiry beyond establishing that the penalty cap for a misdemeanor offense is one year and that a felony charge could call for "time in the penitentiary."  The court's rationale for limiting the evidence was that Jones' potential sentence before becoming a cooperating witness was a collateral matter and could not be determined with precision.

The district court's limitation constitutes an abuse of discretion.  Because the bias of a witness is always relevant, the penalty to which Jones would have been subject had he not testified against Caldwell cannot be characterized as collateral.  Moreover, the minimum sentence that Jones originally faced was clear:  the conspiracy charge against Jones carried a statutory minimum sentence of ten-years imprisonment regardless of the application of any sentencing guideline provision.  See 21 U.S.C. § 841(b)(1)(A)(vii) (1993).  A district court is given wide latitude to limit cross-examination to avoid witness harassment, prejudice, confusion of the issues, or unnecessary repetition.  Van Arsdall, 475 U.S. at 679.  No such concerns, however, warranted the court's ruling in this case.  The evidence Caldwell sought on cross-examination was relevant and accurate.  Therefore, we hold that the district court's exclusion of the evidence violated Caldwell's right to confront the prosecution witness.

We must next decide "whether, assuming that the damaging potential of the cross-examination were fully realized, [we can] nonetheless say that the error was harmless beyond a reasonable doubt."  Van Arsdall, 475 U.S. at 684.  We consider multiple factors, including the importance of Jones' testimony to the overall case against Caldwell; whether it was cumulative, the

4

presence of corroborating or contradicting evidence, the extent of cross-examination otherwise permitted, and the overall strength of the government's case. Id. Although the jury did not learn the extent of the break Jones received for cooperating, Jones testified that his sole reason for testifying was to obtain the reduced misdemeanor charge. In addition, even if we entirely disregard Jones' testimony, the government's case against Caldwell--which included the defendant's own inculpatory statements--was strong. After reviewing the record in light of all the foregoing factors, we conclude that the district court's error was harmless beyond a reasonable doubt.

## II.

Caldwell's next claim of error is that the warrant authorizing the search of his property lacked probable cause. Prior to trial, Caldwell moved to suppress the evidence obtained during the search. After conducting a suppression hearing, a magistrate judge upheld the search warrant and found that the affidavit established probable cause to believe that marijuana and other drug paraphernalia would be found on Caldwell's property. The district court adopted the magistrate's finding. On appeal, Caldwell renews his assertions that the sheriff who led the investigation and who was the sole affiant for the search warrant application made numerous misrepresentations and omissions of fact.

Looking at the totality of circumstances, see Illinois v. Gates, 462 U.S. 213, 238 (1983), we affirm the district court. The facts reported in the search warrant affidavit supported the issuance of the search warrant. Moreover, we find no fundamental inconsistencies between those facts alleged and the sheriff's testimony at the suppression hearing. The district court properly denied Caldwell's motion to suppress evidence.

5

Caldwell also challenges his conviction under the Double Jeopardy Clause of the Fifth Amendment. The issue arises in an unusual factual context. In Caldwell's original agreement with the government, he pleaded guilty to the Count III possession charge and the Count IV criminal forfeiture charge. As part of the agreement, the parties reached a forfeiture settlement whereby Caldwell would pay the government $5,000 and he and his wife would retain the real property named in the forfeiture count. While his subsequent motion to withdraw the plea was pending before the district court, Caldwell nonetheless remitted the $5,000. The court later permitted Caldwell to withdraw his plea and the matter was set for trial on Counts I, II, and III. The government did not pursue criminal forfeiture at trial. Apparently, all parties assumed that the forfeiture settlement remained effective after Caldwell withdrew his plea.[1]

In his motion for a new trial following sentencing, Caldwell raised his double jeopardy claim for the first time in two sentences: "[T]he resolution of Count Four of the Indictment is

---

[1]At oral argument, the government explained that it had believed that the forfeiture could exist in some form of suspended animation until a jury conviction on the substantive counts revived the underlying basis for forfeiture. This concept, though novel, utterly lacks legal support. For his part, Caldwell not only acquiesced to the forfeiture settlement, he insisted on its validity. In his response to the probation office's preliminary presentence investigation report Caldwell asserted:

> The report alleges that Count Four of the Indictment remains pending. The record will clearly show that the judge specifically did not set aside Count Four. The $5,000 fine has been paid to the United States. Count Four has been disposed of and is, therefore, moot.

(Letter Objections to Presentence Investigation Report from Brown dated 4/25/95 at 1.) The government's mistake, however, is in no way lessened by the fact that Caldwell joined in it.

double jeopardy to any or all of the three counts in the Indictment. Defendant should be discharged as to such counts." (District Ct. R. at 310.) The court denied the motion. With respect to the double jeopardy claim, the court concluded that the claim lacked merit because the government had yet to enter a final order of forfeiture in the case. (District Ct. R. at 333.) Caldwell appeals that decision.

We agree with the district court's conclusion but reject its reasoning. Double jeopardy does not even potentially come into play until a defendant has first been put in jeopardy. Crist v. Bretz, 437 U.S. 28, 32-33 (1978). Despite the complicated course of negotiations, plea, and withdrawal, the resolution of this issue is quite simple. The forfeiture settlement was part of the plea agreement. When Caldwell withdrew his plea, the entire agreement--including the forfeiture settlement--became void. The slate, therefore, had been wiped clean.

Thus, at the time of trial, no agreement existed between Caldwell and the government. The mere fact that Caldwell remitted $5,000 and the government accepted the funds does not create an implicit plea agreement. The government was entitled to try Caldwell on all counts in the indictment including those it had dismissed under the plea agreement. See Ehl v. Estelle, 656 F.2d 166, 172 (5th Cir. 1981), cert. denied, 455 U.S. 953 (1982); United States v. Wells, 430 F.2d 225, 229 (9th Cir. 1970). Moreover, the government was no longer bound by its promise in the plea agreement not to file any additional criminal charges arising out of the facts in the case. Caldwell was tried and convicted only once. His double jeopardy claim is misplaced.

Caldwell raises several other claims for reversal. Each lacks merit and none warrants discussion in this opinion.

7

IV.

Caldwell also appeals his sentence. On July 6, 1995, the district court sentenced him to concurrent sentences of 360 months on Count I, 360 months on Count II, and 240 months on Count III. Caldwell challenges both the court's offense level calculation and the imposition of a two-point sentencing enhancement for obstruction of justice.

### A.  Offense Level Calculation

The district court determined that Caldwell's offense level was 38 based on the quantity of marijuana involved in the case.  On two separate occasions, authorities seized a total of 157 pounds (71.2 kilograms) of processed marijuana and 6,037 marijuana plants.  At the time of Caldwell's sentencing, the guidelines provided that one marijuana plant was equivalent to one kilogram of processed marijuana.  U.S.S.G. § 2D1.1(c) (1994).  Thus, the court found that the total quantity of marijuana seized was equivalent to 6,108.2 kilograms.  In calculating the total amount of drugs, the court credited co-conspirator Jones' testimony that he had purchased marijuana from Caldwell over a period of fifteen years, but limited its calculation to the five-year period that could have been charged in the indictment under the statute of limitations.  In other words, using the 6,108.2 figure as an annual base, the court multiplied that amount by five for a total of 30,541 kilograms.  The corresponding offense level of 38 was the highest possible under the applicable guideline.  U.S.S.G. § 2D1.1(c)(1) (1994) (Drug Quantity Table).

We agree with Caldwell that the district court's extrapolation amounted to clear error. See United States v. Bieri, 21 F.3d 811, 817 (8th Cir.) (applying clearly erroneous standard of review to  district court's determination of drug quantity), cert. denied, 115 S. Ct. 208 (1994). There is simply no basis in the record for the

8

court's conclusion that because a certain quantity of drugs was seized from Caldwell in 1993, the same quantity of drugs could be attributed to him for each of the preceding four years.

At trial Jones testified that he had purchased marijuana from Caldwell over a fifteen-year period. When pressed on the frequency and quantity of the purchases, Jones responded that approximately once a month he purchased anywhere from one ounce to three pounds. (Trial Tr. at 397.) Even if the court used the largest figure in Jones' testimony for sentencing purposes, that would still amount to only three pounds, twelve times a year, for five years, or 180 pounds (81.65 kilograms).

When the court calculates the amount of drugs involved in this case at resentencing, it may include the amount of marijuana seized by the government (674.9 kilograms), the amount of marijuana Jones testified to purchasing from Caldwell (anywhere from a minimum of 1.7 kilograms to a maximum of 81.65 kilograms), and any other amounts linked to Caldwell by something more than pure speculation.

In addition, the government concedes that Caldwell's case must be remanded to the district court for resentencing in light of Amendment 516 to the sentencing guidelines. Amendment 516, effective November 1, 1995, reduces the equivalency figure for a marijuana plant by tenfold: When the actual weight of the usable marijuana is unknown, each plant is now treated as the equivalent of 100 grams or marijuana, rather than one kilogram. U.S.S.G. § 2D1.1(c) (1995). The guidelines specifically permit retroactive application of Amendment 516. U.S.S.G. § 1B1.10, p.s. (1995).[2]

_____

[2]Section 1B1.10 provides in relevant part:

> Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, a reduction in the defendant's term of imprisonment is

authorized under 18 U.S.C. § 3582(c)(2).

U.S.S.G. § 1B1.10(a), p.s. Subsection (c) specifically lists Amendment 516. The policy statement further instructs:

Thus, under the amended guideline provision, the weight of the plants the government seized from Caldwell would equal 603.7 kilograms. When combined with the 71.2 kilograms of processed marijuana seized, the total would be 674.9 kilograms. That amount alone--without the improper extrapolation-- would reduce the offense level to 28.

### B.  Obstruction of Justice

Pursuant to guideline section 3C1.1, the court added two levels to Caldwell's base offense for obstruction of justice because it found that Caldwell attempted to intimidate a witness. We review the court's finding of facts under the clearly erroneous standard. United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir. 1993). We find no error in the court's application of the enhancement and reject Caldwell's argument as specious.

### CONCLUSION

In sum, we affirm Caldwell's conviction. We vacate his sentence and remand to the district court for resentencing in accordance with this opinion.

---

> In determining whether, and to what extent a reduction in sentence is warranted for a defendant eligible for consideration under 18 U.S.C. § 3582(c)(2), the court should consider the sentence that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced.

U.S.S.G. § 1B1.10(b), p.s.  We have noted that although the guidelines permit retroactive application of certain amendments, resentencing is within the discretion of the district courts. United States v. Coohey, 11 F.3d 97, 101 (8th Cir. 1993).

10

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.