# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1450

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri |
| David M. Reynolds, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 11, 2001
Filed: October 3, 2001

_____

Before MORRIS SHEPPARD ARNOLD and RICHARD S. ARNOLD, Circuit
Judges, and. TUNHEIM,[1] District Judge

_____

TUNHEIM, District Judge.


On July 11, 2000, a jury found defendant David Reynolds guilty of theft of property moving in interstate commerce in violation of 18 U.S.C. § 659, interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and conspiracy to commit these offenses in violation of 18 U.S.C. § 371. Defendant challenges his

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

conviction on the basis that the district court[2] erred in refusing to allow defendant to cross-exam a witness regarding some syringes found in defendant's brother's vehicle. For the reasons that follow, we affirm.

## I.

Defendant performed contract work for Mo-Kan Container Services ("Mo-Kan") which consisted primarily of moving freight containers from a railroad yard to the Mo-Kan lot and vice versa. On February 7, 1998, defendant picked up a container from the Union Pacific railroad yard for delivery to the Mo-Kan lot in Riverside, Missouri. This container, which originated in Seattle, Washington, contained cartons of Nike tennis shoes and was destined for a Foot Locker store in Junction City, Kansas. A subsequent inspection by a warehouse manager at Mo-Kan revealed that the container had been broken into and approximately 125 cases of shoes were missing.

On February 11, 1998 Officer Ken Shiers stopped defendant's brother, Tom Reynolds, for driving without a headlight. After the stop, Officer Shiers arrested Reynolds for driving with a revoked driver's license. An inventory search of the car and U-Haul trailer that Reynolds was pulling revealed 24 cases of shoes in the trailer and additional pairs of loose shoes in the backseat and trunk of the car, in all totaling 315 pairs of Nike Air Jordan shoes. A U-Haul rental agreement in the car showed that the trailer was rented by defendant on February 11, 1998. Additionally, Officer Shiers found a payment receipt for automobile insurance on the car listing defendant as the insured party and indicating that defendant paid for this insurance on February 10, 1998.

On March 14, 2000, a grand jury returned an indictment charging defendant on the above-mentioned counts for the theft of approximately 125 cartons of Nike tennis

---

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

shoes worth approximately $225,000. Defendant proceeded to trial on July 10, 2000. Officer Shiers testified for the government regarding his arrest of Tom Reynolds on February 11, 1998. Defendant then sought to cross-examine Officer Shiers regarding a box of syringes found in Tom Reynolds' vehicle at the time of his arrest. The government objected on relevance grounds. In a proceeding outside the hearing of the jury, defense counsel argued that the evidence was relevant to show that Tom Reynolds had a drug habit and established Tom Reynolds' motive for committing the offense. The district court denied defendant's request to cross-exam Officer Shiers regarding the syringes.

Tom Reynolds, after invoking his fifth amendment rights before the jury and then being granted immunity, testified that he and defendant stole the shoes from the container and replaced the original container seal with another seal. He further testified that he transported the shoes to Arkansas to sell them in flea markets there. After his arrest in Arkansas, Reynolds testified that he was at a residence in Bonner Springs where he saw the rest of the tennis shoes and received some money from an individual named Mark.

During Tom Reynolds' cross-examination, defense counsel inquired as to several prior convictions, including a prior conviction for possession of methamphetamine. The district court also permitted defense counsel to inquire about Tom Reynolds' use of his father's name and credit cards to purchase merchandise and use the money to purchase methamphetamine even though Tom Reynolds was never convicted of these actions.

Following Tom Reynolds' testimony, defendant sought to recall Officer Shiers to testify about the syringes in the vehicle to impeach Tom Reynolds' ability to reliably perceive and recall the events in question. The district court denied this motion, ruling that the testimony would be cumulative.

On July 11, 2000, the jury returned a verdict convicting defendant on all counts. On February 5, 2001, defendant was sentenced to twenty-four months of imprisonment and three years of supervised release.

## II.

The sole issue on appeal is whether the district court erred in refusing to admit evidence that syringes were found in Tom Reynolds' vehicle. We review the district court's evidentiary rulings for abuse of discretion. United States v. Griffin, 215 F.3d 866, 868 (8th Cir. 2000); United States v. Caldwell, 99 F.3d 522, 524 (8th Cir. 1996).

Defendant first argues that this evidence was admissible under Rule 404(b) to show that Tom Reynolds committed the offense to support his drug habit. But here, evidence of Tom Reynolds' motive is immaterial because Reynolds, who testified for the government under a grant of immunity, admitted that he stole the shoes. The only question at trial was whether he stole the shoes alone or with the defendant.

We also note that defense counsel sought to introduce this evidence through the cross-examination of Officer Shiers. District courts "retain wide latitude" to impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Officer Shiers' ability to testify about the syringes was extremely limited. Officer Shiers could not testify that the syringes belonged to Tom Reynolds or even whether Reynolds knew the syringes were there. Moreover, Officer Shiers could not testify whether the syringes were intended for drug use or whether Tom Reynolds was the person intending to use them. This evidence was only "marginally relevant" and thus properly excluded by the district court.

The district court also did not err in refusing to admit evidence of the syringes to impeach Tom Reynolds' testimony. There was plenty of impeaching evidence admitted against Reynolds, including evidence of use of narcotics. On cross-

examination, Reynolds admitted to a methamphetamine conviction. The district court further allowed defense counsel, over the government's objection, to inquire about Tom Reynolds' purchases of methamphetamine through fraudulent credit card use. Defense counsel also examined Reynolds as to other crimes and bad acts, as well as prior inconsistent statements. On this record, we cannot say that the district court's ruling to exclude evidence of the syringes as cumulative was erroneous.

## III.

Thus, for the foregoing reasons, we affirm the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.