# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3466

_____

United States of America,

      Appellee,

v.

Deon Love,

      Appellant.

\*   Appeal from the United States
\*   District Court for the Western
\*   District of Missouri.

_____

Submitted: February 12, 2003

Filed: May 30, 2003

_____

Before HANSEN,[1] Chief Judge, LOKEN and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Deon Love was convicted of a federal firearm violation and was sentenced to 120 months' incarceration. He argues that his Sixth Amendment right of confrontation was violated when the district court impermissibly restricted his cross-examination of three government witnesses– William Craig Thomas, Tommy Cummings, and Chris Davis. More specifically, Love urges that the district court's limit on his

_____

[1] The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

examination of Thomas is of "particular significance." We agree.[2] The district court's constraints on Love's cross-examination of Thomas–a crucial adverse witness–violated the Confrontation Clause of the United States Constitution. Accordingly, we reverse Love's conviction and remand for new trial.

## I.
## Background

On January 23, 2002, a two-count indictment was returned charging Love with being a felon and drug user in possession of a firearm and selling a stolen firearm.[3] After trial, on May 21, 2002, a jury acquitted Love on the selling charge, but concluded that he was guilty of illegally possessing a firearm.

In support of the government's claim that Love–an undisputed felon–illegally "possessed" a firearm, the jury heard from only one witness who actually observed Love with a firearm. Thomas testified that on April 27, 2001, he saw Love with a "rifle" or "shotgun" and a "little revolver." Thomas stated that Love offered to sell him these weapons because Love was a felon and could not legally possess them. According to Thomas, he declined Love's offer, and Love maintained possession of the firearms.

In response to this testimony, Love attempted to cross-examine Thomas about his mental disability. The district court sustained the government's objection to any

---

[2] Appellant argues–as support for his primary argument of error–that the district court made three other minor cross-examination errors. However, we disagree with appellant's assertion, and find no error in the three other cross-examination issues raised on appeal. Accordingly, our review is isolated to appellant's primary allegation of error.

[3] *See* 18 U.S.C. §§ 922, 924 (1994).

inquiry into Thomas's mental disability.[4] Love proffered evidence[5] to the court that Thomas had been diagnosed with schizophrenia and a short- and long-term memory impairment. Love argued that Thomas's mental illness–specifically his impaired memory–was relevant to his ability to competently recall and recount events more than a year after they allegedly occurred.

On appeal Love acknowledges that Thomas's schizophrenia diagnosis is of questionable relevance and instead concentrates his argument on Thomas's disabled memory. Similarly, our analysis is limited to whether the district court too narrowly limited Love's cross-examination of Thomas's impaired memory.

## II.
## Discussion

---

[4] Interestingly, it was actually Thomas who made the objection–not the government–as to inquiry into his mental defect. Neither the government nor Thomas offered a basis for the objection. The district court sustained the objection without comment.

[5] The precise proffer is as follows:

What I wanted to question him on is statements or an opinion that Dr. Novelus who submitted a report in favor of his mental disability, and Mr. Thomas did receive that disability, Your Honor, Dr. Novelus determined that Mr. Craig Thomas has – his short-term memory and long-term memory are impaired. He has severe mental impairments and he could also be an intrinsic schizophreni[c], which I can see where that possibly may or may not be as relevant, but, Your Honor, I certainly wanted to be able to question him regarding his mental ability and his impairments. I think it went – it goes directly to his ability to be a competent witness relating facts over a year old.

Appellant's Br., at 16.

The Sixth Amendment guarantees a defendant an opportunity for effective cross-examination of witnesses. *United States v. Warfield*, 97 F.3d 1014, 1024 (8th Cir. 1996). However, courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also United States v. Beckman*, 222 F.3d 512, 524 (8th Cir. 2000). A Confrontation Clause violation is shown when a defendant demonstrates that a reasonable jury might have received a significantly different impression of a witness's credibility had counsel been permitted to pursue the proposed line of cross-examination. *Harrington v. Iowa*, 109 F.3d 1275, 1277 (8th Cir. 1990). A trial court's decision to limit cross-examination will not be reversed unless there has been a clear abuse of discretion and a showing of prejudice to defendant. *United States v. Brown*, 110 F.3d 605, 611 (8th Cir. 1997).

Accordingly, we begin with a consideration of Love's right to challenge the accuracy of Thomas's testimony with evidence that Thomas might have a mental defect. As the Fifth Circuit has noted, "a defendant has 'the right to attempt to challenge [a witness's] credibility with competent or relevant evidence of any mental defect or treatment at a time probatively related to the time period about which he was attempting to testify.'" *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001) (quoting *United States v. Partin*, 493 F.2d 750, 763 (5th Cir.1974)). However, "[to] be relevant, the mental health records must evince an 'impairment' of the witness's 'ability to comprehend, know, and correctly relate the truth.'" *Jimenez*, 256 F.3d at 343 (quoting *Partin*, 493 F.2d at 762). Factors which district courts should consider before permitting such cross-examination include: 1) the nature of the psychological problems; 2) whether the witness suffered from the condition at the time of the events to which the witness will testify; 3) the temporal recency or remoteness of the condition. *See Boggs v. Collins*, 226 F.3d 728, 742 (6th Cir. 2000).

The government urges us to affirm because "the district court had ample opportunity to observe Thomas's demeanor[,] to conclude that Thomas was not then suffering from the defect[,] and was able to competently recall events from the past." However, the government's argument misunderstands the role of the district court– it is to determine the *relevance* of a witness's reported mental defect. We do not expect the district court to assume the role of a mental-health expert, and we recognize that the existence of a mental condition, which bears on competence, may not be discernible from a witness's demeanor.

In this case, upon Love's inquiry into Thomas's disability,[6] Thomas answered "diabetes" and then promptly objected to any further questioning. The district court sustained the objection without hearing any evidence of the witness's malady. Evidence of Thomas's impaired memory diagnosis was first introduced during Love's proffer. After becoming aware of the witness's alleged long- and short-term memory affliction, the district court again sustained the objection and offered no comment on the matter.

---

[6] In a footnote the government argues that once Thomas responded that his disability was "diabetes," Love was barred from offering extrinsic evidence to impeach the answer. The government cites *United States v. Elliott*, 89 F.3d 1360, 1368 (8th Cir. 1996) and *United States v. Capozzi*, 883 F.2d 608, 615 (8th Cir. 1989) as support for this proposition. Both cases involve Federal Rule of Evidence 608(b). Generally, a party's right to impugn the character for truthfulness of an opposing party's witness is limited to questioning the witness on cross-examination. When such cross-examination testimony goes into evidence, the examiner must take his answer, and he cannot offer impeachment testimony. However, the scenario before us does not involve a question of character and therefore does not implicate Rule 608(b). Furthermore, Thomas did not intimate that "diabetes" was his exclusive disability. In fact, by objecting to further inquiry into his mental disabilities, Thomas indicated that his answer was not exclusive.

We are convinced that the district court violated Love's right of confrontation when it sustained Thomas's objection. First, we examine the nature of the psychological problems. *Collins*, 226 F.3d at 742. Here the nature of the psychological problem in question is memory loss–a condition that implicates Thomas's ability "to comprehend, know and correctly relate the truth." *Jimenez*, 256 F.3d at 343 (citations omitted). Second, we look to whether the witness suffered from the condition at the time of the events to which the witness will testify. *Collins*, 226 F.3d at 742. Thomas has suffered from this condition since at least 1996.[7] He testified in May of 2002 about events that took place in April 2001–six years *after* receiving a diagnosis of impaired memory. Finally, we consider the temporal recency or remoteness of the condition. *Id.* Here the temporal gulf–five years–between Thomas's diagnosis and the events that he observed is not of sufficient duration to eclipse the relevancy of the inquiry. Accordingly, we conclude that the district court violated Love's right of confrontation by limiting his cross-examination regarding Thomas's mental defect.

Despite finding error below, our inquiry is not complete. We must now consider whether the record shows "beyond a doubt that the error complained of did not contribute to the verdict obtained." *Van Arsdall*, 475 U.S. at 678–79. In *United States v. Caldwell*, 88 F.3d 522, 524 (8th Cir. 1996), we held that when a trial court's decision to limit cross-examination violates the Confrontation Clause, a determination must be made as to whether "the error was harmless in the context of the trial as a whole." The Supreme Court has held that "[t]he harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than

---

[7] The genesis of Thomas's disability diagnosis is a psychological examination that he voluntarily submitted to in order to potentially–and in his case, successfully–be entitled to early release from incarceration.

on the virtually inevitable presence of immaterial error." *Van Arsdall*, 475 U.S. at 681 (internal citation omitted). In assessing whether the error was harmless, we consider "multiple factors, including the importance of the [witness's] testimony to the overall case against [the defendant]; whether it was cumulative, the presence of corroborating or contradicting evidence, the extent of cross-examination otherwise permitted, and the overall strength of the government's case." *Caldwell*, 88 F.3d at 525.

Considering these factors, it is impossible for us to conclude that the error in limiting the cross-examination of Thomas was "harmless beyond a reasonable doubt." *Van Arsdall*, 475 U.S. at 684. First, in relation to importance of the witness's testimony to the overall case against defendant, we note that Thomas was the sole witness to see Love with a firearm in his *possession*. Second, because Thomas was the *only* witness to observe Love with a firearm, it cannot be said that his testimony was cumulative. Third, the record is void of any other examination regarding Thomas's recall capacity–it was neither permitted nor attempted. The final factor–the overall strength of the government's case–is fatal for the government's contention that any error was harmless.

The government argues that "even if the testimony of Thomas was disregarded in its entirety, [the] . . . case against Love was strong." We are not so convinced. The other witnesses–offered to support the selling charge of which Love was acquitted–testified that at no time during the alleged sale did they observe a firearm in Love's possession. Thus, if the testimony of Thomas was disregarded, then the government is left with less than overwhelming evidence of Love's guilt, and we are unable to say that the court's error was "harmless beyond a reasonable doubt." *Caldwell*, 88 F.3d at 525.

### III.
### Conclusion

In conclusion, only one witness–Thomas–stated that he actually observed Love possess a firearm. Love was barred from pursuing a line of questioning into this critical witness's impaired memory diagnosis. This limitation denied Love his constitutionally-guaranteed right to effectively cross-examine Thomas, and we cannot definitively state "that this denial did not contribute to the verdict obtained." *Id.* at 678–79. We reverse and remand for new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.