# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1623

_____

United States of America,      *
    *
       Appellee,     *
    *    Appeal from the United States
    v.     *    District Court for the
    *    Eastern District of Missouri.
Christopher Adam Walley,     *
    *
       Appellant.     *

_____

Submitted: September 23, 2008
Filed: June 4, 2009

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Christopher Adam Walley of conspiring to distribute five grams or more of methamphetamine, and aiding and abetting the possession with the intent to distribute five grams or more of methamphetamine. On appeal, Walley challenges the jury selection process and argues that his Sixth Amendment right of confrontation was violated when the district court[1] limited his cross-examination of two prosecution witnesses. We affirm.

_____

[1] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

# I.

In September 2005, Walley, Brandon Pender, and Tara Dewrock formed a conspiracy to sell methamphetamine. Pender recently had returned from Las Vegas, where he had discovered access to inexpensive methamphetamine, and Walley and Dewrock knew people to whom they could sell the methamphetamine.

According to evidence presented at trial, over the next few months, Walley and Pender took a series of trips to Las Vegas to obtain methamphetamine. On the first trip in October 2005, they were unable to obtain methamphetamine from Pender's planned source, but did obtain a small supply for their personal use. Walley and Pender took a second trip to Las Vegas in December 2005 and brought back to Missouri about 100 grams of methamphetamine. Walley drove on the trip and provided security for the drug transaction. Walley and Dewrock then sold the methamphetamine in Missouri and provided the proceeds to Pender. In February 2006, Dewrock was caught possessing methamphetamine and marijuana. She became a confidential informant in an effort to avoid prosecution. Walley and Pender made their third and final trip to Las Vegas to obtain methamphetamine in April 2006, with Walley again driving and providing security.

When Walley and Pender returned to Missouri to meet with Dewrock, they were instead met by law enforcement officers, who had been alerted to the conspiracy by Dewrock. The officers seized 19.2 grams of methamphetamine, a cutting agent, and a set of hand scales from the vehicle, and arrested Walley and Pender. Once in custody, Walley admitted that he knew the methamphetamine was in the vehicle, that he had used some of it twice, that he knew it was going to be distributed in southeast Missouri, and that he expected to be paid for his time driving to Las Vegas after the methamphetamine was sold.

Walley was indicted for conspiracy to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). After a two-day jury trial, at which both Pender and Dewrock testified for the government, Walley was convicted of the conspiracy charge and of aiding and abetting the possession with intent to distribute five grams or more of methamphetamine. The district court sentenced Walley to 97 months' imprisonment.

II.

Walley first argues that the district court erred in overruling his objection to the government's peremptory strike of an African-American prospective juror. At the close of the jury selection process, Walley objected to the government's strike of the juror, pointing out that she was the only African-American on the panel, that Walley was African-American, and that Walley was concerned about receiving a fair trial without any African-American jurors. In response to Walley's objection, the government explained that it exercised the strike based on three factors: the prospective juror's back problem, her dental abscess, and the fact that she knew a friend or family member with substance-abuse issues. The government elaborated that it was concerned that the prospective juror's health issues would prevent her from being a careful and attentive juror. The district court found that the prospective juror's back problem was not a valid basis for the government's peremptory strike, but nevertheless determined that the juror's abscess and connection to a person with substance-abuse issues were sufficient reasons to justify the strike. We review the district court's denial of Walley's objection for clear error. *United States v. Wilcox*, 487 F.3d 1163, 1169 (8th Cir. 2007).

A party may not use peremptory strikes to exclude prospective jurors deliberately on account of their race. *See Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986). When a defendant raises an objection to the government's use of a

-3-

peremptory strike under *Batson*, the district court should engage in a three-step inquiry to determine whether the strike was based on the prospective juror's race. First, the court must determine whether the defendant has made a *prima facie* showing of racial discrimination. If the defendant does so, then the burden shifts to the government to present a race-neutral explanation for the strike. If the government provides such a reason, the burden shifts back to the defendant, and the court must determine whether the defendant ultimately has proven that the government's strike was based on race. *See Smulls v. Roper*, 535 F.3d 853, 859 (8th Cir. 2008) (en banc).

In this case, the district court did not expressly determine whether Walley made a *prima facie* showing of discrimination. When asked by the court to respond to Walley's objection, the government stated that it had "a reason for striking [the prospective juror] that had nothing to do with her perceived ethnicity." T. Tr. Vol. I, at 82. The district court then "cut to the chase" and requested the government's reasoning. Though it is doubtful that Walley made a *prima facie* showing of discrimination, given that his sole argument was that the prospective juror was the only African-American on the panel, *see United States v. Roebke*, 333 F.3d 911, 913 (8th Cir. 2003) (stating that a strike of the only African-American prospective juror was insufficient alone to make a *prima facie* showing), the government did not contest the issue and instead responded with a statement about its reasoning. Our cases state (though arguably do not hold) that once the government responded with a race-neutral explanation and the district court ruled on the ultimate question of purposeful discrimination, the preliminary *prima facie* issue became moot. *See id.*; *United States v. Brooks*, 2 F.3d 838, 840-41 (8th Cir. 1993) (quoting *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality opinion)). *But see United States v. Stewart*, 65 F.3d 918, 924 (11th Cir. 1995). Therefore, we focus on the district court's determination that the government offered a sufficient race-neutral explanation to show that it did not purposefully discriminate against the prospective juror on account of her race. The district court found that two of the government's explanations for the strike – the juror's dental abscess and her connection to a person with substance-abuse issues –

-4-

were sufficient to justify the government's peremptory strike. Both of these reasons are race-neutral.

On appeal, Walley argues for the first time that the government's failure to strike other similarly situated non-black jurors demonstrates that the government's explanation for its strike was pretext. Our cases hold, however, that we will not consider claims of pretext based upon the failure to strike similarly situated jurors unless the point was raised in the district court. *See United States v. Hunt*, 372 F.3d 1010, 1012 (8th Cir. 2004); *United States v. Boyd*, 168 F.3d 1077, 1078 (8th Cir. 1999); *United States v. Gibson*, 105 F.3d 1229, 1232-33 (8th Cir. 1997). The Supreme Court in *Snyder v. Louisiana*, 128 S. Ct. 1203 (2008), did analyze similarly situated jurors even though the issue was not raised in a state trial court, *id.* at 1211-12, but the court noted that the state supreme court did not hold that the petitioner had procedurally defaulted an argument based on comparable jurors. *Id.* at 1211 n.2. Our precedent in such decisions as *Hunt*, *Boyd*, and *Gibson* applies the sort of procedural bar that was absent in *Snyder*, and the rule is applicable here. Walley did not raise a claim about similarly situated prospective jurors at trial, and we therefore do not consider the issue on appeal. Walley's claim based on *Batson* is without merit.

III.

Walley next contends that the district court violated his rights under the Sixth Amendment by limiting his cross-examination of prosecution witnesses Brandon Pender and Tara Dewrock. We disagree.

The Sixth Amendment provides a criminal defendant the right "to be confronted with the witnesses against him." The primary purpose of this right is to guarantee the opportunity for effective cross-examination, particularly with respect to a witness's potential bias. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "The Confrontation Clause is not, however, without limit; courts 'retain wide latitude

insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Beckman*, 222 F.3d 512, 524 (8th Cir. 2000) (quoting *Van Arsdall*, 475 U.S. at 679). A limitation on cross-examination does not violate the Sixth Amendment unless the defendant shows that "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680.

A.

Walley first argues that his right to confront Pender was violated when the district court prevented him from cross-examining Pender about the specific possible lengths of the sentence he was facing. Pender testified extensively on direct examination about the formation and operation of the drug conspiracy between Walley, Dewrock, and Pender. He also admitted that he was awaiting sentencing on the charge of conspiracy to distribute methamphetamine, was testifying pursuant to a plea agreement, and hoped to get a reduction in his sentence because of his testimony in Walley's trial. He further explained his understanding that he would receive a reduction only if the government exercised its discretion to move for the reduction and that the judge ultimately would determine the extent of any reduction.

On cross-examination, Walley's counsel sought to ask Pender about the forty-year maximum sentence for Pender's offense, and the government objected. During the ensuing bench conference, Walley's counsel also sought permission to inquire about the five-year mandatory minimum sentence. He argued that this information was relevant to Pender's credibility, because Pender could be sentenced below this minimum sentence only if the government made a substantial-assistance motion. *See* 18 U.S.C. § 3553(e). The government argued that the questioning was an

impermissible attempt to present, indirectly, details about Walley's possible sentence, because Walley and Pender were charged with the same offense. *See United States v. Thomas*, 895 F.2d 1198, 1200 (8th Cir. 1990) ("To inform a federal jury about a defendant's punishment would only introduce improper and confusing considerations before it."). The district court sustained the objection, finding that the specifics of the sentence were not relevant, that any probative value was outweighed by their prejudicial effect, and that Pender's credibility could be examined sufficiently by discussing his desire that the government move for a reduced sentence because of his testimony. The district court, however, did permit Walley's counsel to elicit from Pender that "there's certainly no disagreement that you're facing the possibility of a *significant sentence* in this case, is that correct?" T. Tr. Vol. II, at 66 (emphasis added).

Walley relies on *United States v. Caldwell*, 88 F.3d 522 (8th Cir. 1996), and *United States v. Roan Eagle*, 867 F.2d 436 (8th Cir. 1989), for the proposition that the district court erred by excluding evidence of the specific minimum sentence that Pender faced without a substantial-assistance motion by the government. *Caldwell* and *Roan Eagle* both held that it was error for a district court to limit cross-examination about the sentence of a cooperating witness, but the circumstances differed from this case. In *Roan Eagle*, the witness already had received the benefit of a reduction in charges. In exchange for the witness's cooperation, the prosecution had agreed to forego a charge that carried a possible life sentence, and to accept a guilty plea to an offense with a maximum term of ten years' imprisonment. The court held that it was error to preclude the defense from presenting evidence of the reduction in maximum penalties that the witness already had received. *Roan Eagle*, 867 F.2d at 443. Similarly, in *Caldwell*, the prosecution had agreed to dismiss a conspiracy charge with a maximum penalty of ten years' imprisonment and to allow a cooperating witness to plead guilty to a misdemeanor with a maximum sentence of one year. The court held that it was insufficient to permit the defense to elicit only that the witness originally faced the potential of "time in the penitentiary" before the

reduction in charges. *Caldwell*, 88 F.3d at 525; *see also United States v. Chandler*, 326 F.3d 210, 221-22 (3d Cir. 2003).

In this case, Walley does not argue that Pender received a reduction in the range of possible imprisonment before he testified. Rather, Pender hoped to receive a motion by the government to reduce his sentence after the trial. There is no proffered evidence that Pender expected to receive a specific reduction, but Walley argues that he should have been permitted to elicit that Pender faced a minimum of five years' imprisonment if the government did not move to reduce the sentence. He contends that the minimum sentence is relevant to bias, because the greater the mandatory minimum, the stronger the incentive for the witness to earn a reduction. *See United States v. Larson*, 495 F.3d 1094, 1106 (9th Cir. 2007) (en banc); *United States v. Cropp*, 127 F.3d 354, 359 (4th Cir. 1997).

It is not self-evident that a witness facing a longer mandatory minimum has a greater desire to please the government; the witness's motivation likely depends on the magnitude of the benefit that he expects to receive for cooperating. A fifty-year-old witness subject to mandatory life imprisonment may think a reduction to thirty-eight years is worth little, while a twenty-five-year-old facing five years would be eager to reduce the term to four. *See Larson*, 495 F.3d at 1110-11 (Graber, J., concurring in part). Our decisions in *Roan Eagle* and *Caldwell*, therefore, emphasized that the accused should have been able to contrast the original punishment faced by the witness with the more lenient punishment contemplated by the plea agreement – not merely that the original punishment alone was evidence of bias. Here, there is no offer of proof that Pender expected that a particular benefit would flow from his cooperation. The testimony showed only that Pender hoped through his assistance to reduce by an undefined degree the sentence that he otherwise faced.

We are not persuaded that evidence of Pender facing a "five-year sentence" rather than a "significant sentence" would have given the jury a "significantly

different impression" of Pender's credibility. *Van Arsdall*, 475 U.S. at 680. The jury was aware that Pender was subject to a significant sentence, and that the court could reduce the sentence only upon motion of the government. Walley complains that the jury might have thought Pender's "significant sentence" was only two years, rather than five. It seems just as likely, however, that the jury thought "significant" meant that Pender and Walley faced a possible term of ten years or twenty. (Indeed, the malleability of the term makes us wonder why the government thought it an improvement over the actual mandatory minimum.) And even if the jury thought the sentence, without reduction, would be two years, it does not follow that the jury would have appraised Pender's credibility more favorably when the record does not show the extent of reduction that the witness expected. For example, if the amount of expected reduction were held constant, which witness would appear more biased to the jury – the witness hoping to reduce a sentence from two years to probation, or a witness hoping to reduce a sentence from five years to three? In sum, we do not think that whatever marginal value might have been derived from presenting evidence that Pender faced a specific minimum sentence of five years is sufficient on this record to demonstrate that the court's ruling violated Walley's rights under the Confrontation Clause. *See United States v. Arocho*, 305 F.3d 627, 636 (7th Cir. 2002), *abrogated on other grounds by United States v. Rodriguez-Cardenas*, 362 F.3d 958, 960 (7th Cir. 2004); *Cropp*, 127 F.3d at 359 ("The appellants . . . have been unable to explain why questions about exact sentences feared and sentences hoped for were *necessary* when the jury was already well aware that the witnesses were cooperators facing severe penalties if they did not provide the government with incriminating information."); *United States v. Luciano-Mosquera*, 63 F.3d 1142, 1153 (1st Cir. 1995).

B.

Walley also argues that the district court erred under the Confrontation Clause by preventing him from cross-examining Dewrock about her drug trafficking activities before the formation of the charged drug conspiracy. Like Pender, Dewrock testified

about the formation and operation of the drug conspiracy. She also testified about her efforts as a confidential informant that led to the arrests of Pender and Walley. She admitted on direct examination that she had been a drug user for several years, and that in return for her cooperation, the prosecuting authorities agreed to refrain from bringing charges for violations of state or federal law.

On cross-examination, Walley's counsel elicited renewed admissions that Dewrock was involved in a conspiracy to distribute methamphetamine, and that she had distributed methamphetamine on multiple occasions. He then asked Dewrock the following question: "During the periods in which you were using significant quantities of methamphetamine over a four-year period and you were not, as you allege here, obtaining anything from Mr. Pender or Mr. Walley, you distributed other significant quantities of methamphetamine, did you not?" T. Tr. Vol. II, at 190. The government objected on the ground that the question attempted impermissibly to impeach Dewrock with prior bad acts. In response to the objection, Walley's counsel argued at a bench conference that the question was relevant to show that Dewrock was "minimizing her involvement" in the conspiracy. The district court sustained the objection, saying that Dewrock had admitted her role in the conspiracy and that defense counsel had "an awful lot to argue to the jury on that," but that the proposed line of inquiry was not relevant.

Dewrock's prior distribution of methamphetamine was not admissible for the purpose of attacking her character for truthfulness, *United States v. Turner*, 104 F.3d 217, 223 (8th Cir. 1997); Fed. R. Evid. 608(b), and Walley did not state at the bench conference a proper basis for admitting the evidence. On appeal, however, Walley contends that Dewrock's answer to the question should have been admitted to show bias, because it was relevant to establish the full extent of the possible criminal charges that Dewrock avoided by cooperating against Walley. We agree that evidence of additional criminal conduct covered by a non-prosecution agreement is relevant to show bias of the witness, but Walley forfeited this point by not explaining his

rationale to the district court when offered the opportunity, so we review only for plain error. *See United States v. Purkey*, 428 F.3d 738, 757 (8th Cir. 2005); *Turner*, 104 F.3d at 221.

Although Dewrock's answer could have been relevant on the question of bias, Walley fails to establish that the limitation on his questioning of Dewrock constituted a plain error under the Sixth Amendment, or that there was a violation of the Confrontation Clause at all. To show such a violation, Walley must demonstrate that the excluded testimony might have given the jury a "significantly different impression" of Dewrock's credibility. *Van Arsdall*, 475 U.S. at 680. Dewrock already had admitted that she was an active participant in Walley's drug conspiracy, that she repeatedly used and sold drugs, and that she was avoiding all federal and state criminal prosecutions by cooperating. The jury thus had ample reason to conclude that Dewrock had a strong motivation to assist the government, and evidence of additional drug distributions for which Dewrock received immunity is unlikely to have changed the jury's impression of her credibility. *See Purkey*, 428 F.3d at 753-54. The district court's limitation on Walley's cross-examination of Dewrock thus affords no basis for setting aside the conviction.

\*       \*       \*

The judgment of the district court is affirmed.

_____

-11-