KELLY, Circuit Judge, concurring.
I concur in the court's opinion in all respects but one. I believe that the district court's time limitation on Walker's cross-examination of W.F. violated Walker's Sixth Amendment right of confrontation. But because I conclude that the error was harmless, I agree that the judgment should be affirmed.
I
We review "evidentiary rulings regarding the scope of a cross[-]examination for abuse of discretion, but where the Confrontation Clause is implicated, we consider the matter de novo." United States v. White Plume, 847 F.3d 624, 629 (8th Cir. 2017) (quoting United States v. Williams, 796 F.3d 951, 960 (8th Cir. 2015) ).[5] The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination"; it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Accordingly, the right to cross-examination "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Michigan v. Lucas, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) ). "[T]rial judges retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. (cleaned up).
But "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.' " Id. at 151, 111 S.Ct. 1743 (quoting Rock, 483 U.S. at 56, 107 S.Ct. 2704 ); see also United States v. Bear Stops, 997 F.2d 451, 454-57 (8th Cir. 1993) (reversing conviction where exclusion of testimony was disproportionate to the interests that exclusion sought to serve). Accordingly, we must balance the importance of the excluded evidence to Walker's defense against the interests articulated by the district court to determine if the restriction was reasonable. See Boysiewick v. Schriro, 179 F.3d 616, 620 (8th Cir. 1999) ; see also Olden v. Kentucky, 488 U.S. 227, 232, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (balancing relevance and importance of impeachment evidence against "[s]peculation as to the effect of jurors'
*1013 racial biases" to conclude that trial court's limitation on cross-examination was "beyond reason").
In my view, the district court's time limitation on Walker's cross-examination of W.F. was both arbitrary and disproportionate to the purpose it was designed to serve. On this record, the restriction was arbitrary because there was no reasonable explanation for it. Cf. United States v. Bordeaux, 400 F.3d 548, 558 (8th Cir. 2005) (explaining that a district court's exclusion of evidence was not "arbitrary because there exists a reasonable explanation for it-the prevention of harassment or embarrassment of [the witness]"). There was no claim that W.F. would have been harassed had Walker's counsel been permitted to continue his proposed cross-examination. Nor was there a claim that the testimony that defense counsel sought to elicit would be unduly prejudicial or confuse the issues. Finally, there was no claim that the contents of the cross-examination were only "marginally relevant." To the contrary, as Walker argued before the district court and reiterates on appeal, his primary defense-that he believed W.F. was an adult and that they were merely acting out a fantasy-largely depended on his ability to demonstrate to the jury the lengthy history and full nature of his communications with W.F.
Rather, the sole interest that the district court articulated was in "efficiency." It determined that Walker's right to cross-examination should be abridged because his method of presenting his defense was "not efficient," and because continued discussion about the messages that Walker exchanged with W.F. was "very cumulative" and would purportedly contravene "[t]he typical rule of thumb ... that cross is not to exceed the time allotted for direct." As a general proposition, efficiency is a legitimate interest of the criminal trial process. And preventing undue delay and curtailing testimony that is unnecessarily lengthy can serve that interest. But under the facts of this case, there was no efficiency to be gained. Walker sought, at most, a total of two hours and ten minutes for cross-examining W.F.-the government's key witness-and there is no indication that the trial would have been unnecessarily lengthened had the district court permitted Walker's desired cross-examination. See Holley v. Yarborough, 568 F.3d 1091, 1100 (9th Cir. 2009) (concluding that excluding testimony based in part on time constraints was unreasonable because it was unlikely that admitting the testimony "would have significantly lengthened the trial"). Moreover, it cannot be that a defendant's Sixth Amendment right to cross-examine the principal witness against him should be curtailed based on the prosecution's strategic decision regarding the length of its direct examination. Under the particular circumstances of this case, I believe that the restriction based on time constraints was arbitrary.
The district court's time restriction on W.F.'s cross-examination was also disproportionate to the interest that it allegedly served. It is critical here that W.F. was the "central, indeed crucial," witness in the prosecution's case. Olden, 488 U.S. at 233, 109 S.Ct. 480. And it is likewise critical that the length and mode of cross-examining W.F. was part and parcel of Walker's defense. Because the government focused on only a handful of text messages to show that Walker knew W.F. was a minor, Walker sought to highlight the entirety of his messaging with W.F. to attempt to show that the communications were "role-play fantasy and also to discount the claim of exploitation." Moreover, by cross-examining W.F. about all the messages, Walker sought, in part, to "attempt[ ] to familiarize the jury with what for them was a bizarre existence." To that end, the fact that the cross-examination of *1014 W.F. seemed "very cumulative," as the district court concluded, was precisely the point. "[I]t was this accumulation of history," as Walker explains, "that established the texture of Walker's defense that he was living a fantasy." In light of how important it was for Walker to cross-examine W.F. regarding the full messaging history and the very weak interest in efficiency in this case, the district court's time restriction was disproportionate to the purpose it was designed to serve. Cf. Bordeaux, 400 F.3d at 559 (concluding that exclusion was not disproportionate "[i]n light of the minimal probative value of the evidence and the important purpose of the exclusion"-the prevention of witness harassment). In short, I believe that the time limitation on Walker's cross-examination of W.F. violated Walker's Sixth Amendment right of confrontation.
II
"All errors of constitutional dimension do not automatically call for reversal," however. United States v. Jacobs, 97 F.3d 275, 283 (8th Cir. 1996). Confrontation Clause errors are subject to harmless-error review. See Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). This inquiry requires us to "assum[e] that the damaging potential of the cross-examination [was] fully realized," and determine if we "might nonetheless say that the error was harmless beyond a reasonable doubt." Id.; see also United States v. Caldwell, 88 F.3d 522, 525 (8th Cir. 1996). Harmlessness is determined "in the context of the trial as a whole," Caldwell, 88 F.3d at 524, and we consider "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431.
As a practical matter, the harmless-error inquiry in this case presents some analytical difficulty. Generally speaking, in the Van Arsdall line of cases, courts review for harmless error a district court's limitation on cross-examination intended to impeach a witness's credibility. See, e.g., United States v. Love, 329 F.3d 981, 985-86 (8th Cir. 2003) ; Caldwell, 88 F.3d at 524-25. In such circumstances, courts often "disregard" the entirety of the testimony that defense counsel was not permitted to impeach to determine if the Confrontation Clause error was harmless. See, e.g., Love, 329 F.3d at 986 (concluding that error was not harmless in part because if the witness's testimony was disregarded, "the government [was] left with less than overwhelming evidence of [defendant]'s guilt"); Caldwell, 88 F.3d at 525 (concluding that Confrontation Clause violation was harmless because, "even if we entirely disregard [the witness's] testimony, the government's case against [the defendant] ... was strong").
In this case, Walker's proposed cross-examination did not seek to attack W.F.'s credibility per se, so this traditional harmless-error analysis is an imperfect fit. And if we do not disregard W.F.'s testimony as would be required by this analysis, it is difficult, as a conceptual matter, to "assum[e] that the damaging potential of the cross-examination [was] fully realized." Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431. Nevertheless, guided by the Van Arsdall factors-especially "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and ... the overall strength of the prosecution's case"-I conclude that the district court's error was harmless. Walker testified about *1015 his belief that he was acting out a fantasy and discussed the contents of a website containing "source material" for fantasies that he played out with others. Moreover, albeit in a more limited fashion, Walker was ultimately permitted to cross-examine W.F. about many of the messages he exchanged with Walker, especially those that W.F. initiated. Finally, and perhaps most fundamentally, the government's case against Walker was strong. The jury was presented with Walker's own statements that W.F. was "underage and [could] get [him] in trouble," and with evidence that Walker asked W.F. to send him pornographic images. See Caldwell, 88 F.3d at 525 (defendant's own inculpatory statements contributed to strength of government's case, precluding reversal on harmless-error review); see also supra Part I.D (finding that evidence was sufficient to convict Walker). As such, although I am troubled by the Sixth Amendment violation that occurred in this case, I am ultimately persuaded that the error was harmless and agree that the judgment of the district court should be affirmed. I thus concur in the court's opinion except for Part I.B.

To the extent we have applied inconsistent standards of review to Confrontation Clause questions, as the court suggests, it does not affect my view. Even under an abuse of discretion standard, I would conclude that the district court erred in limiting Walker's cross-examination of W.F.